UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>Plaintiff,<br><br>v.<br><br>DYNAMIC ENERGY SOLUTIONS, LLC,<br><br>Defendant. | Case No. 1:20-cv-10814 |

**CONSENT DECREE**

WHEREAS, Dynamic Energy Solutions, LLC ("Dynamic") constructed a solar array development at 103 Briar Hill Road, Williamsburg, Massachusetts (the "Array" or the "Site");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Dynamic's activities resulted in excessive sediment discharges to the West Branch Mill River and Rogers Brook and their associated tributaries and wetlands resource areas ("Resource Areas") and that Dynamic violated the Federal Clean Water Act, 33 U.S.C. § 1311(a), the Massachusetts Wetlands Protection Act, G.L. c. 131, § 40, the Massachusetts Clean Waters Act, G.L. c. 21, § 43(2), and their respective implementing regulations;

WHEREAS, on May 17, 2019, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against Dynamic to

1

the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region I; the Massachusetts Department of Environmental Protection ("MassDEP"); and to Dynamic, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. § 1365;

WHEREAS, on July 16, 2019, Dynamic responded to the notice of intention to file suit and denied the substance of many of the alleged violations;

WHEREAS, on April 28, 2020, the Attorney General filed a Complaint against Dynamic in the United States District Court, District of Massachusetts;

WHEREAS, Dynamic has taken certain steps to prevent further discharges of sediment-laden stormwater to Resource Areas;

WHEREAS, Dynamic has agreed herein to restore and/or mitigate for the Resource Areas impacted by its activities, and estimates that restoration costs will exceed $530,000;

WHEREAS, Dynamic anticipates that these steps, together with implementation of the measures set forth herein and in Dynamic's Stormwater Pollution Prevention Plan ("SWPPP") for the Array, will enable it to comply with the requirements of the Federal Clean Water Act, the Massachusetts Wetlands Protection Act, and the Massachusetts Clean Waters Act;

WHEREAS, Dynamic has transferred ownership of the Array and all assets associated therewith to a third party but has agreed to retain responsibility for compliance with this Consent Decree;

WHEREAS, the Attorney General's Office and Dynamic have reached an agreement to resolve the litigation;

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW, THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), it is ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States) and 28 U.S.C. § 1367 (supplemental jurisdiction over related state claims).

2.      Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

3.      The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

## III. EFFECTIVE DATE

4.      The effective date of this Consent Decree ("Effective Date") shall be when the Court enters the Consent Decree on the docket.

## II. PARTIES BOUND

5.      This Consent Decree shall constitute a binding agreement between the Parties, and Dynamic consents to its entry as a final judgment by the Court and waives all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either Party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the Parties shall

enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and Dynamic agree otherwise in writing within fourteen (14) days of the Court's decision.

6.     Dynamic shall provide a true copy of this Consent Decree to all its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. Dynamic shall also provide a copy of this Consent Decree to any contractor retained to perform work required under this Consent Decree and shall condition any such contract on the contractor's performance of the work in compliance with the terms of this Consent Decree.

7.     No change or transfer in ownership, lease, license, management, or operation of the Array, whether in compliance with the procedures of this paragraph or otherwise, shall relieve Dynamic or its managers, officers, directors, agents, and/or servants of any obligation under this Consent Decree.

8.     Dynamic shall not violate this Consent Decree and Dynamic shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, Dynamic shall not raise as a defense the failure by any of its managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

9.     In addition to any relief specifically provided in this Consent Decree, Dynamic understands and agrees that violations of this Consent Decree may be punishable by contempt.

**IV. PAYMENTS**

10.     Within fifteen (15) days of the Effective Date, Dynamic shall pay to the Commonwealth a civil penalty in the sum of one hundred thousand dollars ($100,000). Payment should be made by Electronic Funds Transfer ("EFT") to the Commonwealth of Massachusetts in accordance with current EFT procedures, using the following account information:

COMMONWEALTH OF MASSACHUSETTS, OFFICE OF ATTORNEY GENERAL



REFERENCE: EPD, COMMONWEALTH v. DYNAMIC - PENALTY

Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, Dynamic shall send notice that such payment has been made to the Commonwealth in accordance with Section XI (Notice).

11.     Within fifteen (15) days of the Effective Date, Dynamic shall make a payment of two-hundred and fifteen thousand dollars ($215,000) to the Hilltown Land Trust (the "Hilltown Land Trust Payment"). The Hilltown Land Trust Payment shall be used by Hilltown Land Trust to fund land acquisition, conservation, and preservation to improve or protect water quality in the Mill River Watershed. The Hilltown Land Trust Payment shall be made by certified check, treasurer's check, or bank check and sent to Sally Loomis, Executive Director, Hilltown Land Trust, 332 Bullitt Road, Ashfield, MA 01330. Evidence of Dynamic's payment to the Hilltown Land Trust shall be provided by Dynamic to the Commonwealth on the day that it is made.

12.     By August 1, 2021, Dynamic shall reimburse the Attorney General's Office in the amount of $80,000 to defray the Attorney General's Office's costs, including attorney fees,

incurred in connection with its work on this matter. Payment should be made by Electronic Funds Transfer ("EFT") to the Commonwealth of Massachusetts in accordance with current EFT procedures, using the following account information:

COMMONWEALTH OF MASSACHUSETTS, OFFICE OF ATTORNEY GENERAL



REFERENCE: EPD, COMMONWEALTH v. DYNAMIC – COSTS/FEES

Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, Dynamic shall send notice that such payment has been made to the Commonwealth in accordance with Section XI (Notice).

## V. INJUNCTIVE RELIEF

13.     Dynamic agrees to ensure that the Array is operated in compliance with the applicable requirements of the United States Environmental Protection Agency's National Pollutant Discharge Elimination System ("NPDES") Permit No. MAR10011V including any amendments thereto (the "Stormwater Permit"), Unilateral Administrative Order 00006005 issued by MassDEP on November 14, 2018 ("the "UAO") (attached hereto as Exhibit A), and with the Federal Clean Water Act, the Massachusetts Wetlands Protection Act, the Massachusetts Clean Waters Act, and their respective implementing regulations.

14.     <u>Restoration and/or Replication of Altered Resource Areas.</u> Dynamic will implement and comply with the Dynamic Energy Solutions, Williamsburg, MA Draft Final Designs prepared by Inter-fluve, Inc. dated November 15, 2020 (22 sheets) and Technical Memorandum Response to DEP Restoration Plan Checklist prepared by Inter-fluve, Inc. dated November 15, 2020, which are

attached as Exhibits B and C hereto and incorporated by reference herein. In order to reconcile any potential disparities between the sediment deposit thicknesses or areal extent depicted on Sheet 20 of the Draft Final Designs (i,e., "Removal of Sediment Deposits") with actual field conditions, Dynamic shall ensure that any and all sediments deposited in Bordering Vegetated Wetlands, Riverfront Area, or Bordering Land Subject to Flooding as a result of the illicit stormwater discharges (as determined by MassDEP) are removed to a depth of no greater than 0.1 feet.

15.    Compensatory Mitigation. As compensation to the Commonwealth for certain Resource Areas that the Commonwealth alleges were altered by Dynamic and cannot be restored, Dynamic shall ensure that by no later than 90 days after the Effective Date, a designated portion of a parcel of vacant land described in this paragraph is transferred by its current owner to the Kestrel Land Trust, or to another land trust/ conservancy or conservation organization approved by the Commonwealth. The overall parcel is known as 103 Briar Hill Road, and further identified by publicly available assessor's data as Property/ID 340/001.A-0000 in Williamsburg, Hampshire County, Massachusetts, containing 324 acres, and described in a portion of the deed recorded with the Hampshire County Registry of Deeds in Book 6092, Page 126 (the "Compensatory Mitigation Area"). The parcel is owned by Hull Forestlands LP. The portion of said parcel that shall comprise the Compensatory Mitigation Area is 24.0 +/- acres of the overall parcel, illustrated as a yellow-colored polygon on Exhibit D. Dynamic shall pay all costs associated with the transfer and designation, including any applicable purchase money for the Compensatory Mitigation Area, stewardship fees, survey expenses, permitting expenses, attorney's fees, and recording fees. Dynamic shall ensure that the Compensatory Mitigation Area is encumbered with a permanent Conservation Restriction consistent with G.L. c. 184, §§ 31-33, as implemented by the Conservation Restriction Review Program of the Massachusetts Executive Office of Energy and

Environmental Affairs. Dynamic shall ensure that within 90 days of the Effective Date the Conservation Restriction is held by a governmental unit or non-profit organization whose purposes include conservation of land or water approved by the Commonwealth.

16.    In order to secure its obligations under paragraph 15 of this Consent Decree (Compensatory Mitigation), within fifteen (15) days of the Effective Date, Dynamic shall pay to Drohan, Tocchio & Morgan, P.C., as escrow agent ("Escrow Agent") $200,000 ("Escrow Payment") to help fund certain activities required by paragraph 15 of this Consent Decree (Compensatory Mitigation). The Escrow Payment shall be managed and disbursed by the Escrow Agent in accordance with the Executed Escrow Agreement, which is attached hereto as Exhibit E and incorporated herein by reference. The Escrow Payment shall be made by certified check, treasurer's check, or bank check and sent to Adam J. Brodsky, Esq., Drohan Tocchio & Morgan, P.C., 175 Derby Street, Suite 30, Hingham, Massachusetts, 02043. Evidence of Dynamic's submission of the Escrow Payment shall be provided by Dynamic to the Commonwealth on the day that it is made.  Nothing in this paragraph is meant to diminish Dynamic's obligations under this Consent Decree, including but not limited to its obligation to incur additional costs beyond the amount of the Escrow Payment that may be necessary to fully comply with paragraph 15 (Compensatory Mitigation).

### VI. ARRAY ACCESS AND SUBMISSION OF RECORDS

17.    Upon reasonable prior notice, Dynamic shall secure for the Attorney General's Office and MassDEP access to the Array Site and any area subject to the restoration or replication activities described in paragraph 14 (Restoration) for the purpose of investigating, sampling, or inspecting any records, condition, equipment, practice, or property relating to activities subject to this Consent Decree. Notwithstanding any provision of this Consent Decree, the Attorney

General's Office and MassDEP retain all their access authorities and rights under applicable state and federal law and pursuant to any access agreements entered into for any area subject to the mitigation, restoration, or replication activities described in paragraph 14 (Restoration).

18.     In additional to any other applicable local, state, or federal records preservation requirements, until three (3) years following the Effective Date, Dynamic shall preserve at least one legible copy of all documents, including electronic documents, in its possession, custody, or control that relate to the performance of Dynamic's obligations under this Consent Decree. If Dynamic retains or employs any agent, consultant, or contractor for the purpose of complying with the terms of this Consent Decree, then Dynamic's agreement or contract with the agent, consultant, or contractor shall require such person or persons to provide Dynamic with a copy of all documents, including electronic documents, relating to the performance of Dynamic's obligations under this Consent Decree.

19.     For a period of three (3) years following the Effective Date, Dynamic will ensure that the Attorney General's Office receives the following documents in accordance with Section X (Notices), below:

   a.   Copies of all documents submitted to EPA, the Commonwealth of Massachusetts, and/or the Town of Williamsburg concerning the Array Site's stormwater discharges and stormwater controls. Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity.

   b.   All maintenance records for the Array Site's stormwater pollution control systems. Maintenance records will be provided within ten (10) business days of Dynamic's receipt of a written request by the Attorney General's Office.

c.   Timely written notice of any planned or completed changes to the stormwater control measures, with dates of anticipated or completed changes.

d.   Current copies the Array Site's SWPPP within three (3) business days of a request by the Attorney General's Office.

e.   Any document related to the performance of Dynamic's obligations under this Consent Decree. These documents will be provided within ten (10) business days of Dynamic's receipt of a written request by the Attorney General's Office.

20.   Any information provided by Dynamic may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

21.   The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth of Massachusetts or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of the company to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII. INTEREST AND COLLECTIONS

22.   If any payment required pursuant to this Consent Decree is late or not made, Dynamic shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) pursuant to G.L. c. 231, § 6B, computed monthly, and shall pay all expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorneys' fees.

## IX. EFFECT OF CONSENT DECREE

23.     Upon compliance with the requirements of this Consent Decree, (a) this Consent Decree shall resolve Dynamic's liability for the specific legal claims alleged against it in the Complaint that arose prior to the entry of this Consent Decree, and (b) the Commonwealth shall release Dynamic for liability for the specific legal claims alleged against Dynamic in the Complaint that arose prior to the entry of this Consent Decree. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all of the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by this Consent Decree or otherwise.

24.     Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by Dynamic or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Department or EPA relative to the Array.

25.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Dynamic is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Dynamic's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Dynamic's compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

11

26.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Decree.

## X. MISCELLANEOUS

27.     Dynamic understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the civil penalty and any other costs or sums that Dynamic may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

28.     Dynamic shall pay all expenses, including reasonable attorneys' fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree.

29.     The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the Parties.

30.     In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business of the next Business Day.

31.     Signatures of the Parties transmitted by scanning and email are binding.

## XI. NOTICES

32.     Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

> For the Attorney General's Office and the Commonwealth:
> Nora J. Chorover, Special Assistant Attorney General
> Environmental Protection Division
> Office of the Attorney General
> One Ashburton Place, 18th Floor
> Boston, MA 02108
> Nora.chorover@mass.gov
>
> For Dynamic:
> Adam J. Brodsky
> Drohan, Tocchio & Morgan, P.C.

175 Derby Street, Suite 30
Hingham, MA 02043
abrodsky@dtm-law.com

or, to such other place or to the attention of such other individual as a Party may from time to time designate by written notice to the other Party to this Consent Decree.

## XII. INTEGRATION

33. Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the Parties and represents the complete and exclusive statement of the Parties with respect to the terms of the settlement agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between the Parties shall have no force and effect.

## XIII. MODIFICATION

34. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the Parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this paragraph.

## XIV. AUTHORITY OF SIGNATORY

35. The person signing this Consent Decree on behalf of Dynamic acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, Dynamic's managers, directors, officers, and shareholders have consented to Dynamic entering into this Consent Decree and to its entry as a Final Judgment; and (c) that he or she is authorized to sign and bind Dynamic to the terms of this Consent Decree.

13

## XV. RETENTION OF JURISDICTION

36.     The Court shall retain jurisdiction over this case for purposes of resolving

disputes that arise under this Consent Decree, entering orders modifying this Consent Decree,

or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI. FINAL JUDGMENT

1.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree

shall constitute a Final Judgment of the Court.


Office of the Attorney General

By: _____

Name: Nora J. Chorover
Title: Special Assistant Attorney General

Dated: 1/28/2021

Dynamic Energy Solutions, LLC

By: _____
Name: Michael Perillo
Title: Chief Executive Officer

Dated: 1/27/2021

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

 */s/ Douglas P. Woodlock*
_____

United States District Court

Dated: _____ **March 24, 2021** _____

14

# EXHIBIT A

 Commonwealth of Massachusetts
Executive Office of Energy & Environmental Affairs

# Department of Environmental Protection

Western Regional Office • 436 Dwight Street, Springfield MA 01103 • 413-784-1100

Charles D. Baker
Governor

Karyn E. Polito
Lieutenant Governor

Matthew A. Beaton
Secretary

Martin Suuberg
Commissioner

### *SENT ELECTRONICALLY AND VIA CERTIFIED AND REGULAR MAIL*

Gregory L. Boyer, Vice President of Operations                    November 14, 2018
Dynamic Energy Solutions, LLC
1550 Liberty Ridge Drive, Suite 310
Wayne, Pennsylvania 19087
gboyer@dynamicenergy.com

> RE:    Violation of Massachusetts Wetlands Protection Act
> - G. L. c. 131, § 40; and Massachusetts Clean
> Waters Act - G.L. c. 21, §§ 26 through 53
> UAO- 00006005
> 103 Briar Hill Road, Williamsburg, MA

**THIS IS AN IMPORTANT NOTICE.  FAILURE TO RESPOND TO THIS NOTICE COULD
RESULT IN SERIOUS LEGAL CONSEQUENCES.**

Dear Mr. Boyer:

The Massachusetts Department of Environmental Protection (hereinafter the "Department") is
hereby notifying you of the issuance of Unilateral Administrative Order, UAO-00006005, for
violations of the above-referenced statutes at 103 Briar Hill Road, Williamsburg, Massachusetts.

MassDEP encourages you to review and follow the requirements of the attached documents.
Failure to do so may subject you to further enforcement action.  There is a right to appeal the
attached document.  Any appeal must be initiated as specifically set forth in each document.  The
Department retains its authority to pursue additional enforcement actions, including but not
limited to the issuance of civil administrative penalties.

Should you have any questions relative to this matter, please contact me at 413-755-2138.

Sincerely,

David Cameron, PWS
Wetlands Program Chief

This Information is available in alternate format. Contact Michelle Waters-Ekanem, Director of Diversity/Civil Rights at 617-292-5751.
TTY# MassRelay Service 1-800-439-2370
MassDEP Website: www.mass.gov/dep

Printed on Recycled Paper

Enclosure: Unilateral Administrative Order

Certified Mail #7018 0680 0000 8392 7841

W:/...Dynamic UAO-00006005 Letter.doc


ec:      Williamsburg Conservation Commission
         conservation@burgy.org

         Goshen Conservation Commission
         Conservation@goshen-ma.us

         Thelma Murphy, Section Chief
         Stormwater & Construction Permits
         EPA New England Headquarters
         5 Post Office Square - Suite 100
         Boston, MA 02109-3912
         Murphy.Thelma@epa.gov

         Barbara H. Newman, Supervisor
         Regulatory Division, Permits and Enforcement Branch A
         United States Department of the Army
         New England District, Corps of Engineers
         Barbara.H.Newman@usace.army.mil

         William B. Hull, GP
         Hull Forestlands Limited Partnership
         101 Hampton Road
         Pomfret Center, Connecticut 06259
         hull@hullforest.com

         Patrick McGowin, Project Manager
         Dynamic Energy Solutions, LLC
         63 Putnam Street, Suite 202
         Saratoga Springs, NY 12866
         pmcgowin@dynamicenergy.com

         Kevin A. McCafferey, P.E.
         SWCA Environmental Consultants
         15 Research Drive
         Amherst, MA 01102
         Kevin.McCaffery@swca.com

         Heather Parent, Senior Counsel, DEP-OGC

         Steven Ellis, Enforcement Coordinator, DEP-WERO

**COMMONWEALTH OF MASSACHUSETTS**
**EXECUTIVE OFFICE OF ENERGY AND ENVIRONMENTAL AFFAIRS**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**

|  |  |
|---|---|
| **In the matter of:**  ) <br> ) <br> Dynamic Energy Solutions, LLC   ) <br> 1550 Liberty Ridge Drive, Suite 310  ) <br> Wayne, Pennsylvania 19087   ) | **UNILATERAL** <br> **ADMINISTRATIVE ORDER** <br><br> Enforcement Document # 00006005 |

## I.   THE PARTIES

1. The Massachusetts Department of Environmental Protection ("MassDEP" or "the Department") is a duly constituted agency of the Commonwealth of Massachusetts established pursuant to M.G.L. c. 21A, §7.  MassDEP has its principal office located at One Winter Street, Boston, Massachusetts 02108, and its Western Regional Office at 436 Dwight Street, Springfield, Massachusetts 01103.

2. Dynamic Energy Solutions, LLC ("Dynamic") is a Limited Liability Company with a mailing address of 1550 Liberty Ridge Drive, Suite 310, Wayne, Pennsylvania 19087. Dynamic directed earth-moving and other activities at 103 Briar Hill Road in Williamsburg, Massachusetts.

## II.   STATEMENT OF FACTS AND LAW

3. The Department is charged with administration and enforcement of M.G.L. c. 131, § 40 (the Wetlands Protection Act) and the Department's Wetlands Regulations at 310 CMR 10.00; and M.G.L. c. 21, §§ 26 through 53 (the Massachusetts Clean Waters Act) and the Department's Regulations governing 401 Water Quality Certification for Discharge of Dredged or Fill Material, Dredging, and Dredged Material Disposal in Waters of the United States within the Commonwealth at 314 CMR 9.00.  The Department's authority to issue this Unilateral Administrative Order ("Order") and to set deadlines for compliance is conferred by the foregoing and by M.G.L. c. 111, § 2C.

4. The following facts have led to the issuance of this Order:

   A. Dynamic is the lessee, developer, project proponent and general contractor of an 18.5+/- acre commercial solar array (i.e., "Project") located within the bounds of an historic sand and gravel extraction pit located on and encompassed by a larger individual parcel of land identified as 103 Briar Hill Road, Williamsburg (Assessor's Map 01A, Lot 4).

   B. The Project also includes the use of, and improvements to, an access road that connects East Street in Goshen to the project, with the planned installation of a utility connection (utility poles and overhead wires).  The access road is located on and/or

Dynamic Energy Solutions, LLC
Administrative Order
File #: 00006005
Page 2 of 8

through parcels identified as 699 East Street, Goshen (Assessor's Map 9-0, Lot 19-0); 0 East Street, Goshen (Assessor's Map 9-0, Lot 20-0); 0 East Street, Goshen (Assessor's Map 9-0, Lot 09-X); and 665 East Street, Goshen (Assessor's Map 9-0, Lot 14-0).

C.  The parcel of land on which the Project is being constructed---as well as the majority of the access road---is owned by Hull Forestlands Limited Partnership of Pomfret, Connecticut. The portion of the access road identified as Assessor's Map 9-0, Lot 14-0 is owned by Phebe Williams. For the purposes of this UAO, the 18.5+/- acre area that encapsulates the solar Project is referred to as the "**Array Site**" while the aggregate of parcels associated with the access road are referred to as the "**Roadway Site**." When described collectively, the Array Site and Roadway Site are referred to as the "**Project Site**."

D.  The Roadway Site crosses "Resource Areas" and "Buffer Zone" (each as defined at 310 CMR 10.04) including jurisdictional perennial streams that are designated as cold-water fisheries ("Land Under Waterbodies and Waterways") with associated 200-foot Riverfront Areas and Bordering Vegetated Wetlands ("BVW"). The approved (see below) Array Site is located just beyond Riverfront Area and Buffer Zones.

E.  The Roadway Site and portions of land down-gradient from the Array Site contain "Bordering Vegetated Wetland" and "Land Under Water" (collectively "Waters of the United States within the Commonwealth") (each as defined or referenced at 314 CMR 9.02).

F.  On September 29, 2017 and November 1, 2017, respectively, the Williamsburg and Goshen Conservation Commissions approved the "work" associated with the Project under Conditional Negative Determinations of Applicability ("DOAs").

G.  Activities at the Array Site have resulted in Resource Area and water quality impacts to abutting, down-gradient parcels (hereinafter "**Impact Site**"). These parcels are identified as follows:

a.    98 Old Goshen Road, Williamsburg (Assessor's Map 01A, Lot 580); and
b.    130 Old Goshen Road, Williamsburg (Assessor's Map 01A, Lot 50).

H.  On or just prior to Tuesday, October 30, 2018, the Williamsburg Conservation Commission (WCC) received an anonymous complaint regarding construction-related sedimentation of West Branch Mill River associated with construction of the Project. On that same day, WCC Commissioners conducted a site inspection at the invitation of and in the presence of Dynamic staff. On the following day, WCC contacted MassDEP via e-mail and provided documentation, including photographs, of the violations described below.

Dynamic Energy Solutions, LLC
Administrative Order
File #: 00006005
Page 3 of 8

I.   MassDEP staff contacted Dynamic representatives via telephone and conducted preliminary telephone interviews on Thursday, November 1, 2018.

J.   On Monday, November 5, 2018 MassDEP contacted Dynamic setting a site inspection for the following day, Tuesday, November 6, 2018. The site inspection was conducted at the designated day and time.

K.   Construction of the Project commenced in early September of 2018 and has continued without any formal and effective stormwater management controls.

L.   Just prior to the commencement of the Project, all the marketable sand was removed from the Array Site (i.e., the site was excavated and graded down to subsoils and parent material consisting of compacted, fine-grained material), largely eliminating the natural water-infiltration capacity of the original soils.

M.   The only partial protection to downslope, off-site Resource Areas consists of a field-designed 19-foot tall earthen berm impounding a 6.1 acre-foot depression within the southern end of the abandoned sand pit.

N.   The activities observed at the Array Site exceed the area of "work" that was the subject of the Williamsburg DOA as it included an expansion of work south of the Array Site covering approximately 5.2 acres that was not presented in the Request for Determination of Applicability (RDA) . In addition, the "work" conducted throughout the Array Site involved the removal of all remaining marketable sand, although the RDA provided that those materials would provide important stormwater infiltration at the Array Site.

O.   Although no portion of the Array Site has been built within "Resource Areas" or "Buffer Zone" (each as defined at 310 CMR 10.04), over 18.5 acres of soils have been modified through grading activities.

P.   On or about October 30, 2018 the down-gradient earthen berm failed, first via apparent overtopping along at least 150 feet of its length, and then by a major breach of the berm. This overtopping and breach led to extensive erosion and sedimentation within several Resource Areas associated with the West Branch Mill River, a "cold-water fishery" as defined at 310 CMR 10.04 and 314 CMR 9.02. Sediment fans and lobes have been deposited in Resource Areas, and soil erosion has led to deep scour escarpments in forest substrates, intersection of the water table, and gullying.

Q.   Additionally, work at the Roadway Site has led to failed erosion and sedimentation controls within Resource Areas and their Buffer Zones. Said controls were not installed per the plans of record approved in the DOA issued by the Goshen Conservation Commission, have not been properly maintained, and subsequent deposition of sediments has occurred in Resource Areas associated with West Branch

Dynamic Energy Solutions, LLC
Administrative Order
File #: 00006005
Page 4 of 8

Mill River, and a tributary thereto, Rogers Brook (SARIS 3419375), also a cold-water fishery.

R. The failed erosion and sediment controls resulted in the following impacts to Resource Areas:
1. Bank (Inland) associated with West Branch Mill River and Rogers Brook (and potentially several intermittent jurisdictional streams) in excess of 2,500 linear feet;
2. Bordering Vegetated Wetland associated with West Branch Mill River and Rogers Brook in excess of 5,001 square feet;
3. Land Under Water Bodies and Waterways associated with West Branch Mill River and Rogers Brook in excess of 21,780 square feet; and
4. Riverfront Area associated with West Branch Mill River and Rogers Brook in excess of 43,560 square feet.

S. Sediment was documented to have and was being discharged to Land Under Water (as referenced at 314 CMR 9.02) associated with West Branch Mill River, Rogers Brook, and several jurisdictional tributary intermittent streams; as well as Bordering Vegetated Wetland (as defined at 314 CMR 9.02) associated with these waterways.

T. A Stormwater Pollution Prevention Plan ("SWPPP") was on-site and within the construction trailer during the November 6, 2018 inspection. MassDEP staff observed numerous violations of the SWPPP, both within and external of Resource Areas.

5. The foregoing facts constitute violations of the following statutes and regulations:

A. The Massachusetts Wetlands Protection Act, MGL c. 131, § 40 which states in part: "No person shall remove, fill, dredge or alter any area subject to protection under this section without the required authorization, or cause, suffer or allow such activity, or leave in place unauthorized fill, or otherwise fail to restore illegally altered land to its original condition, or fail to comply with an enforcement order issued pursuant to this section."

B. 310 CMR 10.08(1)(a) for failure to comply with a Final Determination of Applicability;

C. 310 CMR 10.08(1)(c) for failure to obtain an Order of Conditions prior to alteration of Resource Areas,

D. Illegal discharge of sediment into "Waters of the United States within the Commonwealth" (WUSWC, as defined at 314 CMR 9.02), in violation of the Massachusetts Clean Waters Act, MGL c. 21, §§ 26 through 53.

E. 314 CMR 9.06(2): "No discharge...shall be permitted...";

Dynamic Energy Solutions, LLC
Administrative Order
File #: 00006005
Page 5 of 8

    F.  314 CMR 9.06(6)(a)1.: "No…outfalls may discharge…or cause erosion in wetlands or waters of the Commonwealth" ; and

    G.  314 CMR 9.11: "failure to comply with 314 CMR 9.00…shall be enforced…"

## III.   ORDER

6.  For the reasons and pursuant to the authority stated above, the Department hereby enacts its authority at 319 CMR 10.02(2)(d), and orders that:

    A.  Dynamic shall immediately cease and desist all direct and indirect discharges to Resource Areas and Buffer Zones as defined at 310 CMR 10.04 "Buffer Zone" and "Resource Area"; and to WUSWC as defined at 314 CMR 9.02 "Waters of the United States within the Commonwealth."

    B.  Dynamic shall immediately undertake any and all practicable measures to provide short term stabilization of surficial soils, slopes, and stormwater at the Project Site.

    C.  Dynamic shall, within two business days, provide the Department with a complete copy of the final/signed/executed Stormwater Pollution and Prevention Plan (SWPPP) for the Project Site, and any SWPPP inspection forms/reports that have been completed since Project commencement.

    D.  Dynamic shall obtain a legally binding access agreement that provides Dynamic access to the Impact Site, and to portions of the Array and Road Sites beyond the limits of any leases, for the purpose of performing the actions required hereunder. Such agreement shall also provide the Department access to the Impact Site and all other property at the Site for the purpose of determining compliance with this Unilateral Order. All such access agreements shall be binding on successors and assigns until the actions required herein have been completed to the Department's satisfaction.

    E.  Dynamic shall confirm, delineate and survey the jurisdictional limits of all Resource Areas and WUSWC proximal to the Project Site and upon the Impact Site, as well as delineate, survey, and quantify the limits of any sediment plumes, scoured areas, sink holes, and mass slope failures between the limits of the Project Site and the West Branch of the Mill River and its tributaries. Dynamic shall submit a site plan illustrating said information to the Department within 10 business days.

    F.  Dynamic shall prepare and submit to the Department within 20 business days a "Long-term Project Site Stabilization and Stormwater Management Plan" that results in a formal, calculation-based mechanism and best management practices (BMPs) to more effectively manage stormwater at the Project Site. Said plan should factor in, at a minimum: 1) subdividing the Array Site's drainage area into smaller

Dynamic Energy Solutions, LLC
Administrative Order
File #: 00006005
Page 6 of 8

units/catchments and retaining and managing stormwater at multiple locations throughout and between said units in a manner that precludes the need for all stormwater at the site to collect solely on the basin and against the berm at the southern limits of the Project site for collection and retention; methods for establishing vegetation at the Array Site that reconciles the fact that the Array Site is virtually devoid of topsoils or an otherwise suitable growing medium; 3) methods for stabilizing and maintaining travel surfaces at the Array Site in order to arrest the on-going disturbance and down-gradient migration of soils; 4) implementation of more robust and appropriate sedimentation barriers along the Roadway Site; and 5) methods for better managing stormwater on and along the roadway site such that deposition of sediments into Resource Areas is precluded. Design of any stormwater BMPs shall follow Volume 2, Chapter 2 of the *Massachusetts Stormwater Handbook, Structural BMP Specifications* (MassDEP, 2008).

G. Dynamic shall comply with the SWPPP for the Project Site.

7. Failure to comply with this Order may constitute grounds for further legal action. You are hereby advised that, if you fail to comply with this Order, MGL c. 21, §§ 26 through 53 provides for civil penalties of up to $25,000 per violation per day, for violations of the statute, its implementing regulations and this Order. The Department reserves the right to exercise the full extent of its legal authority, including without limitation, pursuit of criminal prosecution or civil action, court-imposed civil penalties, and/or administrative penalties assessed by the Department.

## IV.    HEARING RIGHTS

8. Dynamic is hereby notified of its right to an adjudicatory hearing under the Massachusetts Administrative Procedures Act, G.L. Chapter 30A, Section 10, regarding this Order.

A. Notice of Claim:  In accordance with the Department's Rules for Conduct of Adjudicatory Proceedings, 310 CMR 1.00, should Dynamic choose to appeal this Order, a Notice of Claim for Adjudicatory Hearing ("Notice of Claim") must be filed in writing, as follows:

Pursuant to 310 CMR 1.01(6), Dynamic must file of any Notice of Claim **within twenty-one (21) days** of the date of issuance of this Order.

The Notice of Claim must state clearly and concisely the facts which are grounds for the proceedings and the relief sought; and must include the appropriate filing fee and Fee Transmittal Form (found at: http://www.mass.gov/eea/docs/dep/service/adr/adjherfm.pdf).

Dynamic Energy Solutions, LLC
Administrative Order
File #: 00006005
Page 7 of 8

The Notice of Claim for Adjudicatory Hearing and a copy of the filing fee (if not
excepted as set forth below) must be addressed to:

Docket Clerk
Office of Appeals and Dispute Resolution
Department of Environmental Protection
One Winter Street
Boston, Massachusetts 02108

A copy of said Notice of Claim must be sent concurrently to:

David Cameron, PWS
MassDEP, Western Regional Office
436 Dwight Street
Springfield, MA 01103

B.  Filing Fee:  The Notice of Claim for Adjudicatory Hearing must be made concurrently
with the payment of a filing fee payable to the Commonwealth of Massachusetts in the
amount of $100.00.  The check for the filing fee and the Fee Transmittal Form (found
at http://www.mass.gov/eea/docs/dep/service/adr/adjherfm.pdf) must be mailed
separately to:

Commonwealth of Massachusetts
Department of Environmental Protection
Lock Box 4062
Boston, Massachusetts 02211

(1)      The hearing request **will be dismissed** if the filing fee is not
paid, unless the appellant is exempt or granted a waiver as described
below.

(2)      EXCEPTIONS:  The filing fee is not required if the appellant is a
city or town (or municipal agency), county, or district of the
Commonwealth of Massachusetts, or a municipal housing authority.

(3)      WAIVER:  The Department may waive the adjudicatory
hearing filing fee for a person who shows that paying the fee will
create an undue financial hardship.  A person seeking a waiver must
file, together with the hearing request as provided above, an
affidavit setting forth the facts believed to support the claim of
undue financial hardship.

Dynamic Energy Solutions, LLC
Administrative Order
File #: 00006005
Page 8 of 8

## SO ORDERED:

Massachusetts Department of Environmental Protection,

By: _____    Date: _11/14/18_

Michael J. Gorski, Regional Director
MassDEP, Western Regional Office
436 Dwight Street
Springfield, Massachusetts 01103



**Massachusetts Department of Environmental Protection**
**One Winter Street, Boston MA 02108 • Phone: 617-292-5751**
## Communication For Non-English Speaking Parties - 310 CMR 1.03(5)(a)

### 1 English:
This document is important and should be translated immediately. If you need this document translated, please contact MassDEP's Diversity Director at the telephone numbers listed below.



### 2 Español (Spanish):
Este documento es importante y debe ser traducido inmediatamente. Si necesita este documento traducido, por favor póngase en contacto con el Director de Diversidad MassDEP a los números de teléfono que aparecen más abajo.



### 3 Português (Portuguese):
Este documento é importante e deve ser traduzida imediatamente. Se você precisa deste documento traduzido, por favor, entre em contato com Diretor de Diversidade da MassDEP para os números de telefone listados abaixo.



### 4(a) 中國（傳統）(Chinese (Traditional)):
本文件非常重要，應立即翻譯。如果您需要翻譯這份文件，請用下面列出的電話號碼與MassDEP的多樣性總監聯繫。



### 4(b) 中国（简体中文）(Chinese (Simplified)):
本文件非常重要，应立即翻译。如果您需要翻译这份文件，请用下面列出的电话号码与MassDEP的多样性总监联系。



### 5 Ayisyen (franse kreyòl) (Haitian) (French Creole):
Dokiman sa-a se yon bagay enpòtan epi yo ta dwe tradui imedyatman. Si ou bezwen dokiman sa a tradui, tanpri kontakte Divèsite Direktè MassDEP a nan nimewo telefòn ki nan lis pi ba a.



### 6 Việt (Vietnamese):
Tài liệu này là rất quan trọng và cần được dịch ngay lập tức. Nếu bạn cần dịch tài liệu này, xin vui lòng liên hệ với Giám đốc MassDEP đa dạng tại các số điện thoại được liệt kê dưới đây.



### 7 ប្រទេសកម្ពុជា (Kmer (Cambodian)):
ឯកសារនេះគឺមានសារៈសំខាន់និងគួរត្រូវបានបកប្រែភ្លាមៗ ប្រសិនបើអ្នកត្រូវបានបកប្រែឯកសារនេះសូមទំនាក់ទំនងផ្នែកជានាយក MassDEP នៅលេខទូរស័ព្ទដែលបានរាយខាងក្រោម។



### 8 Kriolu Kabuverdianu (Cape Verdean):
*Es documento é importante e deve ser traduzido imidiatamente. Se bo precisa des documento traduzido, por favor contacta Director de Diversidade na MassDEP's pa es numero indicode li d'boche.*



### 9 Русский язык (Russian):
Этот документ должен быть немедленно. Если вам нужна помощь при переводе, свяжитесь пожалуйста с директором по этике и разнообразие в MassDEP по телефону указанному ниже.

Contact Michelle Waters-Ekanem, Diversity Director/Civil Rights: 617-292-5751 TTY# MassRelay Service 1-800-439-2370. http://www.mass.gov/eea/agencies/massdep/service/justice/
(Version 11.21.17)



**10 العربية** ⁣   **(Arabic):**

هذه الوثيقة الهامة وينبغي أن تترجم على الفور. اذا كنت بحاجة الى هذه الوثيقة المترجمة، يرجى الاتصال مدير التنوع في
MassDEP على أرقام الهواتف المدرجة أدناه.



**11 한국어 (Korean):**

이 문서는 중요하고 즉시 번역해야합니다. 당신이 번역이 문서가 필요하면 아래의 전화
번호로 MassDEP의 다양성 감독에 문의하시기 바랍니다.



**12 հայերեն (Armenian):**

Այս փաստաթուղթը շատ կարեւոր է եւ պետք է թարգմանել անմիջապես. Եթե Ձեզ
անհրաժեշտ է այս փաստաթուղթը թարգմանվել դիմել MassDEP բազմազանությունը
տնօրեն է հեռախոսահամարների թվարկված են ստորեւ.



**13 فارسی** ⁣   **(Farsi [Persian]):**

این سند مهم است و باید فورا ترجمه شده است.
اگر شما نیاز به این سند ترجمه شده، لطفا با ما تماس تنوع مدیر MassDEP در شماره تلفن های ذکر شده در زیر.



**14 Français (French):**

Ce document est important et devrait être traduit immédiatement. Si vous avez besoin de ce
document traduit, s'il vous plaît communiquer avec le directeur de la diversité MassDEP aux
numéros de téléphone indiqués ci-dessous.



**15 Deutsch (German):**

Dieses Dokument ist wichtig und sollte sofort übersetzt werden. Wenn Sie die Übersetzung
von diesem Dokument benötigen, wenden Sie sich bitte bei der/dem Diversity Director
MassDEP an die unten aufgeführte Telefonnummer.



**16 Ελληνική (Greek):**

Το έγγραφο αυτό είναι σημαντικό και θα πρέπει να μεταφραστούν αμέσως. Αν χρειάζεστε
αυτό το έγγραφο μεταφράζεται, παρακαλούμε επικοινωνήστε Diversity Director MassDEP
κατά τους αριθμούς τηλεφώνου που αναγράφεται πιο κάτω.



**17 Italiano (Italian):**

Questo documento è importante e dovrebbe essere tradotto immediatamente. Se avete
bisogno di questo documento tradotto, si prega di contattare la diversità Direttore di
MassDEP ai numeri di telefono elencati di seguito.



**18 Język Polski (Polish):**

Dokument ten jest ważny i powinien być natychmiast przetłumaczone. Jeśli potrzebujesz
tego dokumentu tłumaczone, prosimy o kontakt z Dyrektorem MassDEP w różnorodności na
numery telefonów wymienionych poniżej.



**19 हिन्दी (Hindi):**

यह दस्तावेज महत्वपूर्ण है और तुरंत अनुवाद किया जाना चाहिए. आप अनुवाद इस दस्तावेज़ की जरूरत है,
नीचे सूचीबद्ध फोन नंबरों पर MassDEP की विविधता निदेशक से संपर्क करें.

Contact Michelle Waters-Ekanem, Diversity Director/Civil Rights: 617-292-5751 TTY# MassRelay Service1-800-439-2370  http://www.mass.gov/eea/agencies/massdep/service/justice/
(Version 11.21.17)

# EXHIBIT B



DYNAMIC ENERGY SOLUTIONS
WILLIAMSBURG, MASSACHUSETTS
DRAFT FINAL DESIGNS

November 15, 2020

LOCATION MAP
STATE OF MASSACHUSETTS
NOT TO SCALE

VICINITY MAP
SCALE - 1" = 5000'

PROJECT LOCATION

SITE MAP
SCALE - 1"=1000'

**SHEET INDEX**

1 - COVER, LOCATION & SHEET INDEX
2 - SITE ACCESS
3 - EXISTING CONDITIONS, PROJECT LOCATIONS & SURVEY CONTROL
4 - AREA 6 GRADING PLAN - A
5 - AREA 6 LAYOUT & MATERIALS - B
6 - AREA 6 SECTIONS, PROFILE & ARRAY - C
7 - AREA 5 GRADING PLAN - A
8 - AREA 5 LAYOUT & MATERIALS - B
9 - AREA 5 SECTIONS, PROFILE & ARRAY - C
10 - AREA 4 GRADING PLAN - A
11 - AREA 4 LAYOUT & MATERIALS - B
12 - AREA 4 SECTIONS, PROFILE & ARRAY - C

13 - AREA 2 GRADING PLAN - A
14 - AREA 2 LAYOUT & MATERIALS - B
15 - AREA 2 SECTIONS, PROFILE & ARRAY - C
16 - TYPICAL DETAILS
17 - TYPICAL DETAILS FES LIFTS 1 OF 2
18 - TYPICAL DETAILS FES LIFTS 2 OF 2
19 - NOTES
20 - REMOVAL OF SEDIMENT DEPOSITS
21 - PLANTING PLAN 1 OF 2
22 - PLANTING PLAN 2 OF 2

DRAFT
Preliminary
Not for Construction

| | | | |
|---|---|---|---|
| DRAWN | SJ, SL, CP | DESIGNED | NJ, KC | CHECKED | NN, SW |

APPROVED    11/13/20 DATE    190526 PROJECT

Dynamic Energy Solutions
DRAFT Final Designs
Williamsburg, Massachusetts

inter-fluve
220 Concord Avenue, 2nd Floor
Cambridge, MA 02136
617.714.5537
www.interfluve.com

COVER, LOCATION &
SHEET INDEX

SHEET
1 OF 22



**LEGEND**

— — ■ — ■ —  PUBLIC RIGHT OF WAY

— — — — — —  PRIVATE RIGHT OF WAY

— · — · —  PARCEL BOUNDARY

TO GOSHEN

EAST ST

PRIVATE RIGHT OF WAY

ROUTE 9

DYNAMIC SOLAR ARRAY

PROJECT SITE

OLD GOSHEN ROAD

SHEET 3

PROPOSED ACCESS TO SITE

ROUTE 9

TO WILLIAMSBURG

| 0 | 1000 | 2000 |

SCALE IN FEET

| SJ, SL, CP | NJ, KC | NN, SW | Dynamic Energy Solutions | interfluve | 220 Concord Avenue, 2nd Floor<br>Cambridge, MA 02136<br>617.714.5537<br>www.interfluve.com | SITE ACCESS | SHEET |
| DRAWN | DESIGNED | CHECKED | DRAFT Final Designs | | | | 2 OF 22 |
| | 11/13/20 | 190526 | Williamsburg, Massachusetts | | | | |
| NO. | BY | DATE | REVISION DESCRIPTION | APPROVED | DAT E | PROJECT | |



**LEGEND**

| | |
|---|---|
| △ | CONTROL POINT |
| ▪▪▪ | PROPOSED NEW ACCESS |
| ▮▮▮ | PRIVATE RIGHT OF WAY |
| – – – | EXISTING PATH ACCESS |
| — – — | PARCEL BOUNDARY |
| — — — | DEPOSITIONAL AREA |
| —·—·— | SCARP AREA |
| ▨ | STAGING AREA |
| — (green) | 100 FT WETLAND BUFFER |
| — (green) | BORDERING VEGETATED WETLAND |
| – – – | LIMITS OF DISTURBANCE |

**NOTES:**

1. THE HORIZONTAL COORDINATE SYSTEM IS THE NORTH AMERICAN DATUM OF 1983, MASSACHUSSETTS STATE PLANE, MAINLANE ZONE, US FEET.

2. THE VERTICAL DATUM IS THE NORTH AMERICAN VERTICAL DATUM OF 1988, US FEET. SCALE WHEN PRINTED ON 11" X 17" SHEETS

3. BORDERING VEGETATED WETLAND LINEWORK FROM DYNAMIC SOLAR IMPACT ASSESSMENT PLAN, SITE PLAN. FUSS & O'NEILL, CS 103.1, 06/30/2019. (PROJECT NUMBER 20181368.A 10)

4. RIVERFRONT AREA LINEWORK FROM DYNAMIC SOLAR IMPACT ASSESSMENT PLAN, SITE PLAN. FUSS & O'NEILL, CS 103.1, 06/30/2019. (PROJECT NUMBER 20181368.A 10)

**CONTROL POINTS TABLE**

| NAME | DESCRIPTION | ELEVATION (FT) | NORTHING (FT) | EASTING (FT) |
|------|-------------|----------------|---------------|--------------|
| CP 100 | CAPPED REBAR | 992.86 | 2982270.41 | 313975.02 |
| CP 102 | CAPPED REBAR | 993.67 | 2982182.03 | 313805.74 |
| CP 103 | CAPPED REBAR | 992.79 | 2982192.99 | 313852.24 |
| CP 104 | CAPPED REBAR | 985.41 | 2982170.23 | 313814.01 |
| CP 101 | CAPPED REBAR | 956.89 | 2982021.50 | 313888.95 |
| CP 109 | CAPPED REBAR | 876.81 | 2981631.04 | 314056.35 |
| CP 105 | CAPPED REBAR | 935.32 | 2981890.06 | 313948.15 |
| CP 106 | CAPPED REBAR | 960.21 | 2982030.04 | 314059.76 |
| CP 107 | CAPPED REBAR | 959.48 | 2982022.70 | 314100.00 |
| CP 110 | CAPPED REBAR | 853.26 | 2981512.85 | 314130.13 |
| CP 200 | CAPPED REBAR | 844.04 | 2981325.44 | 314149.71 |
| CP 201 | CAPPED REBAR | 845.90 | 2981399.71 | 314004.37 |
| CP 202 | CAPPED REBAR | 853.29 | 2981493.86 | 313846.75 |
| CP 203 | CAPPED REBAR | 876.90 | 2981647.37 | 313852.43 |
| CP 204 | CAPPED REBAR | 916.63 | 2981812.33 | 313896.75 |

| | | | | |
|---|---|---|---|---|
| SJ, SL, CP | NJ, KC | NN, SW | Dynamic Energy Solutions | |
| DRAWN | DESIGNED | CHECKED | DRAFT Final Designs | |
| | 11/13/20 | 190526 | Williamsburg, Massachusetts | |
| APPROVED | DATE | PROJECT | | |

220 Concord Avenue, 2nd Floor
Cambridge, MA 02136
617.714.5537
www.interfluve.com

**EXISTING CONDITIONS, PROJECT LOCATIONS & SURVEY CONTROL**

SHEET 3 OF 22



RANGE OF CUT/FILL DEPTHS IN FEET

| COLOR | MIN. DEPTH (FT) | MAX. DEPTH (FT) |
|---|---|---|
|  | -8.00 | -7.0 |
|  | -7.00 | -6.0 |
|  | -6.00 | -5.0 |
|  | -5.00 | -4.0 |
|  | -4.00 | -3.0 |
|  | -3.00 | -2.0 |
|  | -2.00 | -1.0 |
|  | -1.00 | 0.0 |
|  | 0.00 | 1.0 |
|  | 1.00 | 2.0 |
|  | 2.00 | 3.0 |
|  | 3.00 | 4.0 |
|  | 4.00 | 5.0 |
|  | 5.00 | 6.0 |
|  | 6.00 | 7.0 |
|  | 7.00 | 8.0 |
|  | 8.00 | 9.0 |
|  | 9.00 | 10.0 |
|  | 10.00 | 11.0 |

NOTE:
CUT AREAS ARE DEFINED IN RED.
FILL AREAS ARE DEFINED IN BLUE.

LEGEND

⚠ CONTROL POINT
SCARP CENTERLINE
PROPOSED ACCESS
SURVEY BOUNDARY
EXISTING CONDITIONS CONTOURS 1-FOOT (INTER-FLUVE 2019-2020)
EXISTING CONDITIONS CONTOURS 5-FOOT (INTER-FLUVE 2019-2020)
PROPOSED FINISH GRADE 1-FOOT CONTOURS. (INTER-FLUVE 2019-2020)
PROPOSED FINISH GRADE 5-FOOT CONTOURS. (INTER-FLUVE 2019-2020)
EXISTING SCARP BOUNDARY
EXISTING TREE TO REMAIN
EXISTING TREE TO BE REMOVED
LIMITS OF DISTURBANCE

SCALE IN FEET
0    15    30

PROPOSED ACCESS

LIMITS OF DISTURBANCE

SURVEY BOUNDARY

SCARP CENTERLINE

SCARP BOUNDARY

NOTE: THE ENTIRE AREA 6 WORK AREA
INCLUDING GRADING FOOTPRINT AND ACCESS
IS LOCATED ON PROPERTY OWNED BY:

HULL FORESTLANDS LP
101 HAMPTON ROAD
POMFRET CENTER, CT 06259

| | | | SJ, SL, CP | NJ, KC | NN, SW | Dynamic Energy Solutions | | 220 Concord Avenue, 2nd Floor Cambridge, MA 02136 617.714.5537 www.interfluve.com | AREA 6 GRADING PLAN - A | SHEET |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | DRAWN | DESIGNED | CHECKED | DRAFT Final Designs | inter·fluve | | | 4 OF 22 |
| NO. | BY | DATE | REVISION DESCRIPTION | 11/13/20 | 190526 | Williamsburg, Massachusetts | | | | |
| | | | APPROVED | DATE | PROJECT | | | | | |





SECTIONS & PROFILE

ARRAY

LEGEND
— — — EXISTING GROUND
——— PROPOSED GROUND

| | | | Dynamic Energy Solutions | | AREA 6 SECTIONS, | SHEET |
|---|---|---|---|---|---|---|
| SJ, SL, CP | NJ, KC | NN, SW | DRAFT Final Designs | interfluve | PROFILE & ARRAY | 6 OF 22 |
| DRAWN | DESIGNED | CHECKED | Williamsburg, Massachusetts | 220 Concord Avenue, 2nd Floor | - C | |
| | 11/13/20 | 190526 | | Cambridge, MA 02136 | | |
| APPROVED | DATE | PROJECT | | 617.714.5537 www.interfluve.com | | |



| COLOR | MIN. DEPTH (FT) | MAX. DEPTH (FT) |
|-------|-----------------|-----------------|
|  | -5.00 | -4.0 |
|  | -4.00 | -3.0 |
|  | -3.00 | -2.0 |
|  | -2.00 | -1.0 |
|  | -1.00 | 0.0 |
|  | 0.00 | 1.0 |
|  | 1.00 | 2.0 |
|  | 2.00 | 3.0 |
|  | 3.00 | 4.0 |
|  | 4.00 | 5.0 |
|  | 5.00 | 6.0 |
|  | 6.00 | 7.0 |
|  | 7.00 | 8.0 |
|  | 8.00 | 9.0 |

RANGE OF CUT/FILL DEPTHS IN FEET

NOTE:
CUT AREAS ARE DEFINED IN RED.
FILL AREAS ARE DEFINED IN BLUE.

LEGEND

- Δ CONTROL POINT
- SCARP CENTERLINE
- PROPOSED ACCESS
- SURVEY BOUNDARY
- EXISTING CONDITIONS CONTOURS 1-FOOT  (INTER-FLUVE 2019-2020)
- EXISTING CONDITIONS CONTOURS 5-FOOT  (INTER-FLUVE 2019-2020)
- PROPOSED FINISH GRADE 1-FOOT CONTOURS, (INTER-FLUVE 2019-2020)
- PROPOSED FINISH GRADE 5-FOOT CONTOURS, (INTER-FLUVE 2019-2020)
- EXISTING SCARP BOUNDARY
- EXISTING TREE TO REMAIN
- EXISTING TREE TO BE REMOVED
- LIMITS OF DISTURBANCE

SCALE IN FEET
0   10   20

SCARP CENTERLINE

PROPOSED ACCESS

SURVEY BOUNDARY

SCARP BOUNDARY

LIMITS OF DISTURBANCE

101

NOTE: THE ENTIRE AREA 5 WORK AREA
INCLUDING GRADING FOOTPRINT AND ACCESS
IS LOCATED ON PROPERTY OWNED BY:

HULL FORESTLANDS LP

| DRAWN | DESIGNED | CHECKED | | | SHEET |
|-------|----------|---------|---|---|-------|
| SJ, SL, CP | NJ, KC | NN, SW | Dynamic Energy Solutions | AREA 5 GRADING PLAN - A | 7 OF 22 |
| APPROVED | 11/13/20 | 190526 | DRAFT Final Designs | | |
| | DATE | PROJECT | Williamsburg, Massachusetts | | |

interfluve
220 Concord Avenue, 2nd Floor
Cambridge, MA 02136
617.714.5537
www.interfluve.com

NO.  BY  DATE  REVISION DESCRIPTION



| MATERIALS INVENTORY TABLE | | | |
|---|---|---|---|
| TYPE | ITEM | SOURCE | UNIT |
| SALVAGED RAW MATERIAL | WHOLE TREES, TYPICAL DIAMETER 12 INCHES. LENGTH 20 FEET | SALVAGED FROM LEANING AND/OR FALLEN MATERIAL AND MATERIAL ADVERSELY AFFECTED BY EARTHWORK ACTIVITIES. | 2 |
| DERIVED MATERIAL | LOG WITH ROOTWAD. MIN. DIAMETER 12 INCHES. MINI. LENGTH 20 FEET | LOG WITH ROOTWAD CUT TO LENGTH FROM THE WHOLE TREES. | 2 |
| DERIVED MATERIAL | LOG, MINIMUM DIAMETER 10 TO 12 INCHES. LENGTH 20 FEET. | LOG CUT TO LENGTH FROM THE MATERIAL REMAINING AFTER LOG WITH ROOTWAD HAS BEEN CUT FROM SALVAGED WHOLE TREE. | 2 |
| DERIVED MATERIAL | TIMBER PILE, MINIMUM DIAMETER 10 TO 12 INCHES. LENGTH 20 FEET. | LOG WITH ALL BRANCHES REMOVED FLUSH WITH THE TRUNK | 2 |

SURFACE FABRIC TREATMENT

FABRIC ENCAPSULATED SOIL (FES) LIFTS

PROPOSED ACCESS

SURVEY BOUNDARY

SCARP BOUNDARY

LARGE WOOD STRUCTURE, TYP.

LIMITS OF DISTURBANCE

**LEGEND**

| | |
|---|---|
| | CONTROL POINT |
| | SCARP CENTERLINE |
| | PROPOSED ACCESS |
| | SURVEY BOUNDARY |
| | EXISTING CONDITIONS CONTOURS 1-FOOT (INTER-FLUVE 2019-2020) |
| | EXISTING CONDITIONS CONTOURS 5-FOOT (INTER-FLUVE 2019-2020) |
| | PROPOSED FINISH GRADE 1-FOOT CONTOURS. (INTER-FLUVE 2019-2020) |
| | PROPOSED FINISH GRADE 5-FOOT CONTOURS. (INTER-FLUVE 2019-2020) |
| | SURFACE FABRIC |
| | FABRIC ENCAPSULATED SOIL LIFTS |
| | EXISTING SCARP BOUNDARY |
| | EXISTING TREE TO REMAIN |
| | 100 FT WETLAND BUFFER |
| | 20 FT LOG WITH ROOTWAD |
| | TIMBER PILE |
| | LIMITS OF DISTURBANCE |

NOTES:

1. A LARGE WOOD STRUCTURE IS AN ASSEMBLY OF ASSORTED LARGE WOOD MATERIALS INCLUDING, BUT NOT LIMITED TO: LOG, LOG WITH ROOTWAD, SAPLING, TIMBER PILE, AND SLASH. THE LARGE WOOD STRUCTURES ARE FIELD-SET ITEMS THAT WILL MAKE USE OF MATERIALS ON SITE. LAYOUTS AND ORIENTATIONS MAY BE ADJUSTED IN THE FIELD BASED ON THE AVAILABILITY OF SUITABLE LOCAL MATERIALS. MATERIALS SHOWN ON THIS PLAN VIEW REPRESENT THE MATERIALS ANTICIPATED TO BE AVAILABLE AT THIS SPECIFIC TREATMENT AREA OR TREATMENT AREAS NEARBY.

2. LARGE WOOD MATERIALS INCLUDING, BUT NOT LIMITED TO LOG, LOG WITH ROOTWAD, AND TIMBER PILES ARE FIELD SET ITEMS. FINAL LOCATIONS AS SHOWN IN THE PLANS OR AS COORDINATED IN THE FIELD WITH THE DESIGN TEAM.

SCALE IN FEET
0   10   20

| | | | | | |
|---|---|---|---|---|---|
| | SJ, SL, CP | NJ, KC | NN, SW | **Dynamic Energy Solutions** | **AREA 5 LAYOUT &** |
| | DRAWN | DESIGNED | CHECKED | **DRAFT Final Designs** | **MATERIALS - B** |
| | | 11/13/20 | 190526 | **Williamsburg, Massachusetts** | |
| NO. | BY DATE REVISION DESCRIPTION | APPROVED DATE | PROJECT | | 8 OF 22 |

interfluve
220 Concord Avenue, 2nd Floor
Cambridge, MA 02136
617.714.5537
www.interfluve.com

SHEET



| SJ, SL, CP | NJ, KC | NN, SW | Dynamic Energy Solutions | | 220 Concord Avenue, 2nd Floor | AREA 5 SECTIONS, | SHEET |
| DRAWN | DESIGNED | CHECKED | DRAFT Final Designs | interfluve | Cambridge, MA 02136 617.714.5537 www.interfluve.com | PROFILE & ARRAY - C | 9 OF 22 |
| | 11/13/20 | 190526 | Williamsburg, Massachusetts | | | | |
| APPROVED | DATE | PROJECT | | | | | |



AREA 4 GRADING PLAN - A

SHEET 10 OF 22

Dynamic Energy Solutions
DRAFT Final Designs
Williamsburg, Massachusetts

interfluve
220 Concord Avenue, 2nd Floor
Cambridge, MA 02136
617.714.5537
www.interfluve.com



**MATERIALS INVENTORY TABLE**

| TYPE | ITEM | SOURCE | UNIT |
|---|---|---|---|
| SALVAGED RAW MATERIAL | SAPLINGS, TYPICAL DIAMETER 4 TO 8 INCHES | SALVAGED FROM LEANING AND/OR FALLEN MATERIAL WITHIN THE TREATMENT AREA AND MATERIAL ADVERSELY AFFECTED BY EARTHWORK ACTIVITIES. | 4 |
| SALVAGED RAW MATERIAL | WHOLE TREES, TYPICAL DIAMETER 12 INCHES. LENGTH 20 FEET | SALVAGED FROM LEANING AND/OR FALLEN MATERIAL AND MATERIAL ADVERSELY AFFECTED BY EARTHWORK ACTIVITIES. | 5 |
| DERIVED MATERIAL | LOG WITH ROOTWAD. MIN. DIAMETER 12 INCHES. MINI. LENGTH 20 FEET | LOG WITH ROOTWAD CUT TO LENGTH FROM THE WHOLE TREES. | 9 |
| DERIVED MATERIAL | LOG, MINIMUM DIAMETER 10 TO 12 INCHES. LENGTH 20 FEET | LOG CUT TO LENGTH FROM THE MATERIAL REMAINING AFTER LOG WITH ROOTWAD HAS BEEN CUT FROM THE WHOLE TREE. | 5 |
| DERIVED MATERIAL | TIMBER PILE, MINIMUM DIAMETER 10 TO 12 INCHES. LENGTH 20 FEET. | LOG WITH ALL BRANCHES REMOVED FLUSH WITH THE TRUNK | 4 |

FABRIC ENCAPSULATED SOIL (FES) LIFTS 1/17

**LEGEND**

⚠ CONTROL POINT
SCARP CENTERLINE
▬▬ PROPOSED ACCESS
SURVEY BOUNDARY
EXISTING CONDITIONS CONTOURS 1-FOOT (INTER-FLUVE 2019-2020)
EXISTING CONDITIONS CONTOURS 5-FOOT (INTER-FLUVE 2019-2020)
PROPOSED FINISH GRADE 1-FOOT CONTOURS. (INTER-FLUVE 2019-2020)
PROPOSED FINISH GRADE 5-FOOT CONTOURS. (INTER-FLUVE 2019-2020)
SURFACE FABRIC
FABRIC ENCAPSULATED SOIL LLIFTS
EXISTING SCARP BOUNDARY
EXISTING TREE TO REMAIN
BORDERING VEGETATED WETLAND
20 FT LOG WITH ROOTWAD
2O FT LOG
4 - 8 INCH SAPLING
TIMBER PILE
LIMITS OF DISTURBANCE

0   15   30
SCALE IN FEET

PROPOSED ACCESS

SURVEY BOUNDARY

SCARP BOUNDARY

LARGE WOOD STRUCTURE, TYP.

LIMITS OF DISTURBANCE

**NOTES:**

1.  A LARGE WOOD STRUCTURE IS AN ASSEMBLY OF ASSORTED LARGE WOOD MATERIALS INCLUDING, BUT NOT LIMITED TO: LOG, LOG WITH ROOTWAD, SAPLING, TIMBER PILE, AND SLASH. THE LARGE WOOD STRUCTURES ARE FIELD-SET ITEMS THAT WILL MAKE USE OF MATERIALS ON SITE. LAYOUTS AND ORIENTATIONS MAY BE ADJUSTED IN THE FIELD BASED ON THE AVAILABILITY OF SUITABLE LOCAL MATERIALS. MATERIALS SHOWN ON THIS PLAN VIEW REPRESENT THE MATERIALS ANTICIPATED TO BE AVAILABLE AT THIS SPECIFIC TREATMENT AREA OR TREATMENT AREAS NEARBY.

2.  LARGE WOOD MATERIALS INCLUDING, BUT NOT LIMITED TO LOG, LOG WITH ROOTWAD, AND TIMBER PILES ARE FIELD SET ITEMS. FINAL LOCATIONS AS SHOWN IN THE PLANS OR AS COORDINATED IN THE FIELD WITH THE DESIGN TEAM.

| | | | SJ, SL, CP DRAWN | NJ, KC DESIGNED | NN, SW CHECKED | Dynamic Energy Solutions DRAFT Final Designs Williamsburg, Massachusetts | interfluve 220 Concord Avenue, 2nd Floor Cambridge, MA 02136 617.714.5537 www.interfluve.com | AREA 4 LAYOUT & MATERIALS - B | SHEET 11 OF 22 |
|---|---|---|---|---|---|---|---|---|---|
| NO. | BY | DATE | REVISION DESCRIPTION | 11/13/20 APPROVED | 190526 DATE PROJECT | | | | |





**NOTE:**
CUT AREAS ARE DEFINED IN RED.
FILL AREAS ARE DEFINED IN BLUE.

| RANGE OF CUT/FILL DEPTHS IN FEET | | |
|---|---|---|
| COLOR | MIN. DEPTH (FT) | MAX. DEPTH (FT) |
|  | -4.00 | -3.0 |
|  | -3.00 | -2.0 |
|  | -2.00 | -1.0 |
|  | -1.00 | 0.0 |
|  | 0.00 | 1.0 |
|  | 1.00 | 2.0 |
|  | 2.00 | 3.0 |
|  | 3.00 | 4.0 |
|  | 4.00 | 5.0 |

**NOTE:**
THE ENTIRE AREA 2 WORKAREA INCLUDING GRADING FOOTPRINT AND ACCESS IS LOCATED ON PRIVATE RESIDENTIAL PROPERTY. GREAT CARE SHOULD BE TAKEN TO AVOID UNNECESSARY DISTURBANCE TO VEGETATION AND SOILS WHEN PERFORMING CONSTRUCTION ACTIVITIES IN THIS AREA. DISTURBANCES SHALL BE RESTORED.

**LEGEND**

| | |
|---|---|
| ⚠ | CONTROL POINT |
| | SCARP CENTERLINE |
| ▬ ▬ ▬ | PROPOSED ACCESS |
| | SURVEY BOUNDARY |
| – – – | EXISTING CONDITIONS CONTOURS 1-FOOT  (INTER-FLUVE 2019-2020) |
| | EXISTING CONDITIONS CONTOURS 5-FOOT  (INTER-FLUVE 2019-2020) |
| | PROPOSED FINISH GRADE 1-FOOT CONTOURS, (INTER-FLUVE 2019-2020) |
| | PROPOSED FINISH GRADE 5-FOOT CONTOURS, (INTER-FLUVE 2019-2020) |
| | EXISTING SCARP BOUNDARY |
| | EXISTING TREE TO REMAIN |
| | EXISTING TREE TO BE REMOVED |
| – – – | LIMITS OF DISTURBANCE |

SCALE IN FEET
0   10   20

| SJ, SL, CP | NJ, KC | NN, SW |
|---|---|---|
| DRAWN | DESIGNED | CHECKED |
| | 11/13/20 | 190526 |
| APPROVED | DATE | PROJECT |

**Dynamic Energy Solutions**
**DRAFT Final Designs**
**Williamsburg, Massachusetts**

inter-fluve
220 Concord Avenue, 2nd Floor
Cambridge, MA 02136
617.714.5537
www.interfluve.com

AREA 2 GRADING PLAN - A

SHEET
13 OF 22



| MATERIALS INVENTORY TABLE | | | |
|---|---|---|---|
| TYPE | ITEM | SOURCE | UNIT |
| SALVAGED RAW MATERIAL | SAPLINGS, TYPICAL DIAMETER 4 TO 8 INCHES | SALVAGED FROM LEANING AND/OR FALLEN MATERIAL WITHIN THE TREATMENT AREA AND MATERIAL ADVERSELY AFFECTED BY EARTHWORK ACTIVITIES. | 4 |
| SALVAGED RAW MATERIAL | WHOLE TREES, TYPICAL DIAMETER 12 INCHES. LENGTH 20 FEET | SALVAGED FROM LEANING AND/OR FALLEN MATERIAL AND MATERIAL ADVERSELY AFFECTED BY EARTHWORK ACTIVITIES. | 8 |
| DERIVED MATERIAL | LOG WITH ROOTWAD, MIN. DIAMETER 12 INCHES, MINI. LENGTH 20 FEET | LOG WITH ROOTWAD CUT TO LENGTH FROM THE WHOLE TREES. | 8 |
| DERIVED MATERIAL | LOG, MINIMUM DIAMETER 10 TO 12 INCHES. LENGTH 20 FEET | LOG CUT TO LENGTH FROM THE MATERIAL REMAINING AFTER LOG WITH ROOTWAD HAS BEEN CUT FROM THE WHOLE TREE. | 8 |
| DERIVED MATERIAL | TIMBER PILE, MINIMUM DIAMETER 10 TO 12 INCHES. LENGTH 20 FEET. | LOG WITH ALL BRANCHES REMOVED FLUSH WITH THE TRUNK | 1 |

NOTES:

1. A LARGE WOOD STRUCTURE IS AN ASSEMBLY OF ASSORTED LARGE WOOD MATERIALS INCLUDING, BUT NOT LIMITED TO: LOG, LOG WITH ROOTWAD, SAPLING, TIMBER PILE, AND SLASH. THE LARGE WOOD STRUCTURES ARE FIELD-SET ITEMS THAT WILL MAKE USE OF MATERIALS ON SITE. LAYOUTS AND ORIENTATIONS MAY BE ADJUSTED IN THE FIELD BASED ON THE AVAILABILITY OF SUITABLE LOCAL MATERIALS. MATERIALS SHOWN ON THIS PLAN VIEW REPRESENT THE MATERIALS ANTICIPATED TO BE AVAILABLE AT THIS SPECIFIC TREATMENT AREA OR TREATMENT AREAS NEARBY.

2. LARGE WOOD MATERIALS INCLUDING, BUT NOT LIMITED TO LOG, LOG WITH ROOTWAD, AND TIMBER PILES ARE FIELD SET ITEMS. FINAL LOCATIONS AS SHOWN IN THE PLANS OR AS COORDINATED IN THE FIELD WITH THE DESIGN TEAM.

## LEGEND

- CONTROL POINT
- SCARP CENTERLINE
- PROPOSED ACCESS
- SURVEY BOUNDARY
- EXISTING CONDITIONS CONTOURS 1-FOOT (INTER-FLUVE 2019-2020)
- EXISTING CONDITIONS CONTOURS 5-FOOT (INTER-FLUVE 2019-2020)
- PROPOSED FINISH GRADE 1-FOOT CONTOURS. (INTER-FLUVE 2019-2020)
- PROPOSED FINISH GRADE 5-FOOT CONTOURS. (INTER-FLUVE 2019-2020)
- SURFACE FABRIC
- FABRIC ENCAPSULATED SOIL LIFTS
- EXISTING SCARP BOUNDARY
- EXISTING TREE TO REMAIN
- 100 FT WETLAND BUFFER
- 20 FT LOG WITH ROOTWAD
- 20 FT LOG
- 4 - 8 INCH SAPLING
- TIMBER PILE
- LIMITS OF DISTURBANCE

SCALE IN FEET

| | DRAWN | DESIGNED | CHECKED | Dynamic Energy Solutions DRAFT Final Designs Williamsburg, Massachusetts | inter-fluve | 220 Concord Avenue, 2nd Floor Cambridge, MA 02136 617.714.5537 www.interfluve.com | AREA 2 LAYOUT & MATERIALS - B | SHEET |
|---|---|---|---|---|---|---|---|---|
| | SJ, SL, CP | NJ, KC | NN, SW | | | | | 14 OF 22 |
| NO. BY DATE REVISION DESCRIPTION | APPROVED | 11/13/20 DATE | 190526 PROJECT | | | | | |



SECTIONS & PROFILE

SCARP 2 CENTERLINE PROFILE

LEGEND
– – – – EXISTING GROUND
——— PROPOSED GROUND

ARRAY

Dynamic Energy Solutions
DRAFT Final Designs
Williamsburg, Massachusetts

interfluve
220 Concord Avenue, 2nd Floor
Cambridge, MA 02136
617.714.5537
www.interfluve.com

AREA 2 SECTIONS,
PROFILE & ARRAY
- C

SHEET
15 OF 22



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | SJ, SL, CP | NJ, KC | NN, SW | Dynamic Energy Solutions | | SHEET |
| | | DRAWN | DESIGNED | CHECKED | DRAFT Final Designs | 220 Concord Avenue, 2nd Floor<br>Cambridge, MA 02136<br>617.714.5537<br>www.interfluve.com | TYPICAL DETAILS |
| NO. | BY | DATE | REVISION DESCRIPTION | 11/13/20 | 190526 | Williamsburg, Massachusetts | interfluve | 16 OF 22 |
| | | | APPROVED | DATE | PROJECT | | | |



Dynamic Energy Solutions
DRAFT Final Designs
Williamsburg, Massachusetts

interfluve
220 Concord Avenue, 2nd Floor
Cambridge, MA 02136
617.714.5537
www.interfluve.com

TYPICAL DETAILS FES LIFTS
1 OF 2

SHEET
17 OF 22

| DRAWN | DESIGNED | CHECKED |
|---|---|---|
| SJ, SL, CP | NJ, KC | NN, SW |
| APPROVED | 11/13/20 DATE | 190526 PROJECT |



SPECIAL PROVISIONS
1. THE CONTRACTOR SHALL BE RESPONSIBLE FOR THE COST OF ALL MEANS OF SLOPE IMPROVEMENT; COST OF ADDITIONAL EXPLORATION; AND FOR ALL LABOR TOOLS, EQUIPMENT AND INCIDENTALS NECESSARY TO COMPLETE THE WORK.

2. CONTRACTOR SHALL BE RESPONSIBLE FOR COMPLYING WITH ALL FEDERAL, STATE AND LOCAL REQUIREMENTS FOR EXECUTION OF THE WORK, INCLUDING LOCAL INSPECTION AND CURRENT OSHA EXCAVATION REGULATIONS.

3. PRIOR TO UNDERTAKING ANY GRADING OR EXCAVATION OF THE SITE, THE CONTRACTOR SHALL CONFIRM THE LOCATION OF PROPOSED SOIL SLOPES.

4. ALL WORK UNDERTAKEN IN THE CONSTRUCTION OF THE SOIL SLOPES IS SUBJECT TO THE QUALITY CONTROL/ASSURANCE PROVISIONS DESCRIBED BELOW.

SUBGRADE PREPARATION
1. SUBGRADE SHALL BE EXAMINED BY THE GEOTECHNICAL ENGINEER TO CONFIRM THAT THE ACTUAL SUBGRADE CONDITIONS MEET OR EXCEED ASSUMED DESIGN ASSUMPTIONS. AS A MINIMUM, SOIL SHALL BE PROOF-ROLLED BEFORE CONSTRUCTION PROCEEDS. SUBGRADE CONDITIONS NOT MEETING THE REQUIRED STRENGTH SHALL BE REMOVED AND REPLACED WITH ACCEPTABLE MATERIAL.

2. OVER-EXCAVATED AREAS SHALL BE REPLACE WITH COMPACTED GRANULAR BACKFILL MATERIAL OR SOILS APPROVED BY THE GEOTECHNICAL ENGINEER TO THE LINES AND GRADES SHOWN ON THE CONSTRUCTION DRAWINGS.

3. GRANULAR BACKFILL SHALL BE PLACED IN LOOSE LIFTS NOT EXCEEDING 8 INCHES IN THICKNESS, COMPACTED TO A MINIMUM OF 95 PERCENT OF THE MAXIMUM DENSITY AS DETERMINED BY ASTM D-1557. THE MOISTURE CONTENT OF THE BACKFILL PRIOR TO, AND DURING, COMPACTION SHALL BE UNIFORMLY DISTRIBUTED THROUGHOUT EACH LAYER AND SHALL BE WITHIN A RANGE OF 2% BELOW, TO 2% ABOVE OPTIMUM MOISTURE CONTENT.

4. COMPACTION SHALL BE APPLIED USING EITHER A HEAVY VIBRATORY PLATE COMPACTOR OR VIBRATORY TRENCH ROLLER COMPACTOR NECESSARY TO ACHIEVE COMPACTION.

BACKFILL
BACKFILL SHALL CONSIST OF SUITABLE GRANULAR MATERIALS CONSISTING OF USCS SOIL TYPES GP, GW, SW, SP, OR SM MEETING THE FOLLOWING GRADATION AS DETERMINED IN ACCORDANCE WITH ASTM D422. IMPORTED MATERIALS (IF REQUIRED) SHALL MEET THE REQUIREMENTS OF THE FOLLOWING GRADATION:

SIEVE SIZE PERCENT PASSING BY WEIGHT

| | |
|---|---|
| 2 INCH | 100 |
| 3/4 INCH | 45 - 95 |
| 1/4 INCH | 30 - 90 |
| NO. 10 | 25 - 80 |
| NO. 40 | 10 - 50 |
| NO. 200 | 0 – 12 |

THE PLASTICITY INDEX OF THE FINE FRACTION SHALL BE LESS THAN 15.

USCS SOIL TYPES CL, CH, ML, MH, OR SC SHALL NOT BE USED IN ANY PORTION OF THE BACKFILL.
ALL BACKFILL MATERIALS, WHETHER ON-SITE OR IMPORTED, SHALL BE APPROVED BY THE GEOTECHNICAL ENGINEER PRIOR TO CONSTRUCTION.
TEST RESULTS OF ALL PROPOSED BACKFILL MATERIALS, WHETHER ON-SITE OR IMPORTED, SHALL BE SUBMITTED TO THE GEOTECHNICAL ENGINEER FOR APPROVAL PRIOR TO CONSTRUCTION.

QUALITY ASSURANCE
1. TESTING AND INSPECTION SERVICES SHALL BE PERFORMED ONLY BY TRAINED AND EXPERIENCED PERSONNEL AND EXPERIENCED TECHNICIANS CURRENTLY QUALIFIED FOR THE WORK THEY ARE TO PERFORM.

2. MINIMUM FREQUENCY OF TESTING FOR SOILS-RELATED PORTION OF CONSTRUCTION:
   2.a. FIELD DENSITY TESTS IN ACCORDANCE WITH ASTM D2922 OR ASTM D1558 (ONE TEST FOR EVERY 2,500 SQUARE FEET OF BACKFILL PER LIFT).
   2.b. LABORATORY MOISTURE-DENSITY RELATIONSHIPS IN ACCORDANCE WITH ASTM D-157 AS SPECIFIED FOR SUBGRADE AND BACKFILL MATERIAL.
   2.c. GRADATION ANALYSES IN ACCORDANCE WITH ASTM D422 (ONE TEST FOR EVERY 500 CUBIC YARDS OF EACH MATERIAL).
   2.d. IF TESTING SERVICES ARE PROVIDED BY ANYONE OTHER THAN THE GEOTECHNICAL ENGINEER OR THEIR REPRESENTATIVE, REPORTS SHALL BE SUBMITTED TO THE OFFICE OF THE ENGINEER ON A WEEKLY BASIS.

NOTES:

GENERAL:

1. CONTRACTOR SHALL NOTIFY DIG-SAFE (1-888-344-7233) AT LEAST 72 HOURS PRIOR TO EXCAVATING.
2. CONTRACTOR SHALL BE RESPONSIBLE FOR SITE SECURITY AND JOB SAFETY.  CONSTRUCTION ACTIVITIES SHALL BE IN ACCORDANCE WITH OSHA STANDARDS AND LOCAL REQUIREMENTS.
3. AREAS DISTURBED DURING CONSTRUCTION SHALL BE RESTORED.
4. WORK WITHIN LOCAL RIGHTS-OF-WAY SHALL CONFORM TO LOCAL MUNICIPAL STANDARDS.
5. WORK ON PRIVATE RESIDENTIAL PROPERTY SHALL CONFORM TO ANY AND ALL AGREEMENTS MADE WITH THE RESPECTIVE LANDOWNER BY THE PROJECT PROPONENT, MASSDEP.
6. AREAS OUTSIDE THE PROPOSED LIMIT OF WORK SHALL BE RESTORED, AT THE CONTRACTOR'S EXPENSE, TO THE ORIGINAL, UNDISTURBED CONDITION.
7. CONTRACTOR SHALL PREVENT DUST, SEDIMENT, AND DEBRIS FROM EXISTING THE SITE AND SHALL BE RESPONSIBLE FOR CLEAN UP, REPAIRS, AND CORRECTIVE ACTION IF SUCH OCCURS.
8. DAMAGE FROM CONSTRUCTION LOADS SHALL BE REPAIRED BY THE CONTRACTOR AT NO COST TO THE OWNER.
9. CONTRACTOR SHALL CONTROL STORMWATER RUNOFF DURING CONSTRUCTION TO PREVENT ADVERSE IMPACTS OT OFF SITE AREAS AND SHALL BE RESPONSIBLE TO REPAIR RESULTING DAMAGES, IF ANY, AT NO COST TO THE OWNER.
10. THIS PROJECT DISTURBS MORE THAN ONE ACRE OF LAND AND FALLS WITHIN THE NPDES CONSTRUCTION GENERAL PERMIT (CGP) PROGRAM AND EPA JURISDICTION. PRIOR TO THE START OF CONSTRUCTION, CONTRACTOR IS TO FILE A CGP NOTICE OF INTENT WITH THE EPA AND PREPARE A STORMWATER POLLUTION PREVENTION PLAN IN ACCORDANCE WITH THE NPDES REGULATIONS.  CONTRACTOR SHALL CONFIRM THE OWNER HAS ALSO FILED A NOTICE OF INTENT WITH THE EPA.

UTILITIES:
1. WE DO NOT ANTICIPATE THE PRESENCE OF UNDERGROUND UTILITIES IN THE WORK AREAS. UTILITIES MAY BE PRESENT IN THE ACCESS AND STAGING AREAS.
2. LOCATIONS OF OVERHEAD AND SUBSURFACE UTILITIES ON PUBLIC WAYS AND PRIVATE ACCESS WAYS ARE NOT SHOWN ON THESE PLANS. COORDINATE WITH PRIVATE ACCESS OWNER TO DETERMINE UTILITIES THAT MAY BE AT RISK AND SHOULD BE AVOIDED.

LAYOUT AND MATERIALS
1. ANY EXISTING PROPERTY LINE MONUMENTATION DISTURBED DURING CONSTRUCTION SHALL BE SET OR RESET BY A PROFESSIONAL LICENSED SURVEYOR.

EXISTING CONDITIONS INFORMATION:
1. BASE PLAN: THE PROPERTY LINES SHOWN ON THESE PLANS WERE DETERMINED VIA THE ONLINE MASSGIS LEVEL 3 PARCEL DATA AVAILABLE VIA THE OLIVER WEB VIEWER NOVEMBER 9, 2020. THIS LINEWORK IS APPROXIMATE AND DOES NOT SUPERSEDE PROPERTY BOUNDARIES FLAGGED IN FIELD BY A PROFESSIONAL LICENSED SURVEYOR.
2. ELEVATIONS SHOWN ON THE PLAN ARE PROVIDED IN UNITS OF FEET REFERENCED TO THE NORTH AMERICAN VERTICAL DATUM OF 1988 (NAVD 88).
3. TOPOGRAPHIC SITE SURVEY CONDUCTED BY INTER-FLUVE 2019, 2020.
4. SUPPLEMENTAL TOPOGRAPHIC INFORMATION DERIVED FROM THE 2015 QL1 LIDAR (USGS) ACCESSED MARCH 2020.

| NO. | BY | DATE | REVISION DESCRIPTION | SI, SL, CP DRAWN | NJ, KC DESIGNED | NN, SW CHECKED | Dynamic Energy Solutions DRAFT Final Designs Williamsburg, Massachusetts |  220 Concord Avenue, 2nd Floor Cambridge, MA 02136 617.714.5537 www.interfluve.com | NOTES | SHEET 19 OF 22 |
| | | | | APPROVED | 11/13/20 DATE | 190526 PROJECT | | | | |





Dynamic Energy Solutions
DRAFT Final Designs
Williamsburg, Massachusetts

220 Concord Avenue, 2nd Floor
Cambridge, MA 02136
617.714.5537
www.interfluve.com

PLANTING PLAN 1 OF 2

SHEET
21 OF 22

**RESTORATION AREA PLANTING TABLE**

| Restoration Area | Habitat Type | Area (sq. ft.) | Vegetation Layer | Common Name | Scientific Name | Size1 | Stock | Spacing/Application Rate4 | Quantity | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Wetland Depositional Areas | Palustrine Forested Wetland | 30,333 | Herbaceous | New England Wetmix (or similar)2 | - | - | Seed | 1 lb./2,500 sq. ft | 12 | Sow Throughout |
| | | | | Sensitive Fern | Onoclea sensibilis | 12" | GC | | 110 | |
| | | | | Cinnamon Fern | Osmundastrum cinnamomea | 12" | GC | | 110 | |
| | | | | New York Fern | Thelypteris novebora censis | 12" | GC | | 110 | |
| Scarp Area 2 | Palustrine Forested Wetland | 2,567 | Herbaceous | New England Wetmix (or similar)2 | - | - | Seed | 1 lb./2500 sq. ft | 1 | Sow Throughout |
| | | | | Sensitive Fern | Onocle a sensibilis | 12" | GC | | 25 | |
| | | | | Cinnamon Fern | Osmundastrum cinnamomea | 12" | GC | | 25 | |
| | | | | New York Fern | Thelypteris noveboracensis | 12" | GC | | 25 | |
| | | | Tree/Shrub | Red Maple | Acer rubrum | 3-4' | RC | 15' oc | 5 | |
| | | | | Yellow Birch | Betula aleghaniensis | 3-4' | RC | 15' oc | 5 | |
| | | | | Northern Spicebush | Lindera benzoin | 2-3' | RC | 10' oc | 10 | |
| | | | | Eastern Hemlock | Tsuga canadensis | 3-4' | RC | 15' oc | 5 | |
| Scarp Area 4 | Upland Coniferous Forest | 5,161 | Herbaceous | New England Erosion Control/ Restoration Mix for Dry Sites3 | - | - | Seed | 1 lb/ 1,250 sq. ft. | 4 | Sow Throughout |
| | | | | Hay Scented Fern | Dennstaedtia punctilobula | 12" | GC | | 48 | |
| | | | | Christmas Fern | Polystichum acrostichoides | 12" | GC | | 48 | |
| | | | Tree/Shrub | Black Birch | Betula lenta | 3-4' | RC | 15' oc | 9 | |
| | | | | Sweet Fern | Comptonia peregrina | 1-2' | RC | 10' oc | 12 | |
| | | | | Mountain Laurel | Kalmia angustifolia | 2-3' | RC | 10' oc | 15 | |
| | | | | Eastern Hemlock | Tsuga canadensis | 3-4' | RC | 15' oc | 12 | |
| Scarp Area 5 | Upland Coniferous Forest | 1,887 | Herbaceous | New England Erosion Control/ Restoration Mix for Dry Sites3 | - | - | Seed | 1 lb/ 1,250 sq. ft. | 2 | Sow Throughout |
| | | | | Hay Scented Fern | Dennstaedtia punctilobula | 12" | GC | | 15 | |
| | | | | Christmas Fern | Polystichum acro stichoides | 12" | GC | | 15 | |
| | | | Tree/Shrub | Mountain Laue l | Kalmia angustifolia | 2-3' | RC | 10' oc | 6 | |
| | | | | Eastern Hemlock | Tsuga canadensis | 3-4' | RC | 15' oc | 6 | |
| Scarp Area 6 | Upland Coniferous Forest | 8,653 | Herbaceous | New England Erosion Control/ Restoration Mix for Dry Sites3 | - | - | Seed | 1 lb/ 1,250 sq. ft. | 7 | Sow Throughout |
| | | | | Hay Scented Fern | Dennstaedtia punctilobula | 12" | GC | | 100 | |
| | | | | Christmas Fern | Polystichum acrosti choides | 12" | GC | | 100 | |
| | | | Tree/Shrub | Black Birch | Betula lenta | 3-4' | RC | 15' oc | 20 | |
| | | | | Sweet Fern | Comptonia peregrina | 1-2' | RC | 10' oc | 24 | |
| | | | | Mountain Laurel | Kalmia angustifolia | 2-3' | RC | 10' oc | 24 | |
| | | | | Eastern Hemlock | Tsuga canadensis | 3-4' | RC | 15' oc | 20 | |

NOTES:

1. PLANT SIZES ARE APPROXIMATE. FINAL PLANTING SCHEME MAY SLIGHTLY DIFFER FROM THAT SUMMARIZED ABOVE, SUBJECT TO RETAIL AVAILABILITY OF PLANT STOCK. SUBSTITUTIONS ALLOWED PENDING PROFESSIONAL WETLAND SCIENTIST (PWS) APPROVAL.

2. NEW ENGLAND PLANTS SPECIES INCLUDED WITH WETLAND SEED MIX:  FOX SEDGE (CAREX VULPINOIDEA), LURID SEDGE (CAREX LURIDA), BLUNT BROOM SEDGE (CAREX SCOPARIA),  BLUE VERVAIN (VERBENA HASTATA), FOWL BLUEGRASS (POA PALUSTRIS), HOP SEDGE (CAREX LUPULINA), GREEN BULRUSH (SCIRPUS ATROVIRENS),  CREEPING SPIKE RUSH (ELEOCHARIS PALUSTRIS),  FRINGED SEDGE (CAREX CRINITA),  SOFT RUSH (JUNCUS EFFUSUS), SPOTTED JOE PYE WEED (EUPATORIUM MACULATUM), RATTLESNAKE GRASS (GLYCERIA CANADENSIS), SWAMP ASTER (ASTER PUNICEUS),  BLUEFLAG (IRIS VERSICOLOR), SWAMP MILKWEED (ASCLEPIAS INCARNATA), SQUARE STEMMED MONKEY FLOWER (MIMULUS RINGENS).

3. NEW ENGLAND EROSION CONTROL/RESTORATION FOR DRY SITES PLANT SPECIES: RED FESCUE (FESTUCA RUBRA), CANADA WILD RYE (ELYMUS CANADENSIS), ANNUAL RYEGRASS (LOLIUM MULTIFLORUM), PERENNIAL RYEGRASS (LOLIUM PERENNE),  LITTLE BLUESTEM (SCHIZACHYRIUM SCOPARIUM), INDIAN GRASS (SORGHASTRUM NUTANS),  SWITCH GRASS (PANICUM VIRGATUM), UPLAND BENTGRASS (AGROSTIS PERENNANS).

4. FERNS INTENDED TO SUPPLEMENT SEED MIX. SPACING AND LOCATION TO BE DETERMINED BY SUPERVISING PWS.

ABBREVIATIONS: RC -ROOTED CONTAINER. GC -GALLON CONTAINER

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| SJ, SL, CP DRAWN | NJ, KC DESIGNED | NN, SW CHECKED | **Dynamic Energy Solutions** DRAFT Final Designs Williamsburg, Massachusetts |  | 220 Concord Avenue, 2nd Floor Cambridge, MA 02136 617.714.5537 www.interfluve.com | PLANTING PLAN 2 OF 2 | SHEET 22 OF 22 |
| | 11/13/20 DATE | 190526 PROJECT | | | | | |
| APPROVED | | | | | | | |

NO.  BY  DATE  REVISION DESCRIPTION

# EXHIBIT C

# TECHNICAL MEMORANDUM



**Date:**     November 15, 2020

**Project:**   Dynamic Energy Solutions Impact Mitigation, Williamsburg, MA

**Re:**      Response to DEP Restoration Plan Checklist

## Executive Summary

In 2019, Inter-Fluve was retained by Dynamic Energy Solutions, LLC (Owner) to provide ecological restoration design services to address erosion and deposition that occurred downgradient of a solar development in Williamsburg, Massachusetts, as the result of the 2018 failure of the embankment of an on-site stormwater detention basin.

In 2020, the design team (Inter-Fluve, Fuss & O'Neill, Lucas Environmental, LLC), on behalf of Dynamic Energy Solutions, has been coordinating with the Massachusetts Department of Environmental Protection (MassDEP) in the development of restoration designs to address the stormwater failure referred to above. MassDEP provided a checklist of items typically needed for approving a restoration plan for impacts to Bordering Vegetated Wetland (BVW) and Riverfront Area per the *Massachusetts Inland Wetland Replication Guidelines* (MassDEP 2002) and the Western Region Wetlands Program. Our restoration plan includes area within the BVW and Riverfront Area. As the questions in each checklist are similar, our responses are consolidated into this single document, in which we respond to each of the items in the checklist. This document, along with the restoration Drawings, will constitute the Restoration Plan for review by MassDEP.

The project area includes four scarps[1] along the steeper portions of the hillslope and deposits of eroded material along the flatter wetland areas downgradient of the scarps. This area of erosion and deposition will be referred to in this report as "the Site" (**Error! Reference source not found.**).

---

[1] A scarp is a very steep slope that has been cut or eroded into a hillside.



*Figure 1. The Site in Williamsburg, MA. Inset map shows location within Massachusetts.*

## BVW Restoration Plan

## 1. Parcel and Project Data

Wetlands File Number and/or Transmittal Number: N/A

Owner of parcels on which proposed Bordering Vegetated Wetland (BVW) Restoration/Replication Area will be located:

> Southern Parcel
>> Tedric Eiseman
>> 98 Old Goshen Road
>> Williamsburg, MA 01096
> Northern Parcel
>> Hull Forestlands LP
>> 101 Hampton Road
>> Pomfret Center, CT 06259

Municipality and locus, including facility name, property owners, and street addresses provided in the Restoration Plan:

Dynamic Solar built the solar array on land owned by Hull Forestlands LP. The site address is:

> 103 Briar Hill Road
> Williamsburg, MA 01096

Assessor's map and parcel identifying codes:

> Tedric Eiseman: Book: 12279; Page: 165; Location ID: M_95815_908780
> Hull Forestlands LP: Book: 6092; Page: 126; Location ID: M_95739_910813

Land use and land cover of the present condition of the proposed BVW Restoration/Replication Area site: The entire site is forested and undeveloped. A river and smaller streams flow through part of the site, with wetlands along the hillslope where groundwater emerges. A foot path crosses through a portion of the site, but there is no other development within the restoration limits. Upslope of the work area is the solar array developed by Dynamic.

Name and credentials of Wetland Scientist who designed BVW Restoration/Replication Area: The Restoration Plan was designed by a team of consulting firms at the recommendation of MassDEP: Inter-Fluve developed the overall restoration plan for managing erosion within the scarps; Fuss & O'Neill geotechnical engineer has provided guidance on slope stability and

stability of materials; Lucas Environmental, LLC (LE) Professional Wetland Scientist (Tom Liddy, PWS #1723) has delineated the wetlands and provided guidance on proposed planting.

Name and credentials of construction contractors responsible for building BVW Restoration/Replication Area and designated foreperson: Not yet chosen. This information will be supplied once the contractor is chosen.

Name and credentials of Compliance Monitor appointed to monitor BVW Restoration/Replication Area: Nick Nelson, CERP – Certified Ecological Restoration Professional, fluvial geomorphologist, and regional director for Inter-Fluve with over 13 years of experience designing and overseeing construction of river and wetland restoration projects.

## 2. Data for Lost BVW

An LE Professional Wetland Scientist (PWS) delineated wetland resource areas in December 2018 and collected data from both the impacted wetland resource area and the relatively undisturbed areas of BVW to document the vegetation, soils, and hydrology of the wetland system. The wetland delineation was subsequently reviewed by MassDEP and determined to be accurate.

The impacted wetland areas generally consist of a palustrine, forested, needle-leaved evergreen wetland (PFO4). The tree canopy is comprised primarily of eastern hemlock (*Tsuga canadensis*) with lesser amounts of red maple (*Acer rubrum*) and yellow birch (*Betula alleghaniensis*). The understory is generally open and sparse but is vegetated with younger growth of the tree canopy species as well as northern spicebush (*Lindera benzoin*), gray birch (*Betula populifolia*), highbush blueberry (*Vaccinium corymbosum*), and mountain laurel (*Kalmia latifolia*).  The understory is vegetated with a mix of goldthread (*Coptis trifolia*), cinnamon fern (*Osmundastrum cinnamomea*), New York fern (*Thelypteris noveboracensis*), and sensitive fern (*Onoclea sensibilis*). These species are all typical of those found growing on seasonally saturated, forested sites with some displaying adaptations for living in flooded soils including trees with buttressed roots. Indicators of surface water flow through the wetland including sediment deposits, drift lines, and drainage patterns.

Soils observed within the impacted wetland were difficult to analyze due to the depth of sediment that was deposited. The sediment eroded from the active scarps was deposited in various locations across lower gradient areas of the Site. The deposit is composed of cobbles, gravel, sand, and silt. Soils underneath the deposited material generally consist of an organic rich mineral A-horizon which ranges in depths between four to six inches, underlain by a depleted matrix.

## 3.  Data for Proposed BVW Restoration/Replication Area(s)

Proposed Location of BVW Restoration/Replication Area: *In Situ*

Proposed Hydrology of BVW Restoration/Replication Area: NA – the restoration plan includes the removal of sand, gravel, and cobble that had been deposited on top of the wetland. No change to the groundwater elevation or water supply is proposed; the ground surface will be lowered through the removal of the depositional material.

Proposed Soil Structure of BVW Restoration/Replication Area: NA – the restoration plan includes the removal of sand, gravel, and cobble that had been deposited on top of the wetland. No wetland soil enhancement is being proposed.

Proposed Hydrophytic Plant Community in BVW Restoration/Replication Area: Once the sediment has been removed, the remaining soil will be examined to determine if it has been significantly compacted. It may be necessary to aerate and/or scarify the original wetland soil. It is expected that there is already an adequate seed bank in the existing wetland soils that lie underneath the fill material.  However, it is recommended that the impacted areas be seeded with *New England WetMix* (or equivalent) to help provide accelerated stabilization. The seed mix will also be supplemented with fern species common throughout the impacted area, specifically cinnamon fern (*Osmundastrum cinnamomea*), sensitive fern (*Onoclea sensibilis*), and New York fern (*Thelypteris noveboracensis*). Refer to the attached Planting Plan in the design Drawings for proposed plantings. Scarp 2, which is located within wetland areas, shall be seeded with *New England Wet Mix*, available from New England Wetland Plants, Inc. (or approved equivalent) and supplemented with herbaceous plantings.

## 4. Minimum Site Plan Features

☒ Site plan has been stamped by a Professional Land Surveyor or Registered Professional Engineer

☒ Scale is 1 inch = 30 feet or better, unless alternate scale is approved by the Department

☒ Contour interval of one (1) foot

☒ All data collection points, Observation Plots, transects geographically portrayed

☒ Proposed boundary of BVW Restoration/Replication Area(s) clearly demarcated

☒ Areal extent, as expressed in square feet, of BVW Restoration/Replication Area(s) is printed

☐ Boundary of extant BVW is shown, with surveyed points (flags)

See Dynamic Solar Impact Assessment Plan: Site Plan. Fuss & O'Neill, 2019.

☒ Location of planted material is clearly referenced

☒ Location and extent of seeded areas is clearly referenced

☐ Microtopographic features spatially portrayed (<u>mapped</u>). Not Applicable

    ☐ Depressions and/or pools

    ☐ Mounds

    ☐ Rock fragments, bedrock left in place

    ☐ Woody debris

    ☐ Other proposed features (perches, nesting boxes, platforms, etc.)

☒ "Limit-of-work" boundary clearly demarcated

☒ Position and type of erosion and sedimentation controls

☐ Long-term protective measures within the Buffer Zone (fences, signs, easements). Not Applicable

☒ Cross-section plans with:

    ☒ Depth to excavated surface

    ☒ Proposed depth of translocated soil with layer depths.

    ☐ Predicted vertical range (elevations) of apparent water table. Not Applicable

    ☐ Predicted duration of saturation/inundation, and justification. Not Applicable

    ☐ Confining layers, if any. Not Applicable

    ☒ Gradient statistics for proposed and/or existing contours within one hundred (100) feet of the proposed boundary of BVW Restoration/Replication Area(s)

☐ Proposed location of chemically treated surfaces (e.g. roads) within one hundred (100) feet of the proposed boundary of BVW Restoration/Replication Area(s) and mitigation, **OR**

☒    No chemically treated surfaces are proposed within one hundred (100) feet of the proposed boundary of the BVW Restoration/Replication Area(s)

☐    Proposed location of snow disposal areas within one hundred (100) feet of the proposed boundary of the BVW Restoration/Replication Area(s) and mitigation, **OR**

☒    No snow disposal areas are proposed within one hundred (100) feet of the proposed boundary of the BVW Restoration/Replication Area(s)

☐    Proposed location of "point sources" of "stormwater discharge" within one hundred (100) feet of the proposed boundary of the BVW Restoration/Replication Area(s) [please note that the proposed discharge of treated stormwater into a BVW Restoration/Replication Area(s) may fail 314 CMR 9.06(5) and/or (6)] **OR**

☒    No "point sources" of "stormwater discharge" are proposed within one hundred (100) feet of the proposed boundary of the BVW Restoration/Replication Area(s)

## 5. BVW Restoration/Replication Area Monitoring

As discussed with MassDEP, Wetland Determination Data Forms were not completed due to the severity of the impacts on the site and the agreement of the extent of resource areas and impacted areas. The following documents have been approved by MassDEP in defining the wetland boundaries and describing the wetlands impacted:

- Dynamic Solar Impact Assessment Plan: Site Plan. Fuss & O'Neill, 2019.
- Impact Assessment Report, Dynamic Energy Solar Array. Lucas Environmental, LLC, 2019.

The monitoring in the Restoration Checklist provided by MassDEP includes installation and monitoring of groundwater wells. As this project is not creating new wetlands or altering the groundwater, the installation and monitoring of groundwater wells is not applicable to this restoration project.

The following monitoring elements will be completed at the project site for two years after construction (see Figure 2 for locations of monitoring elements):

Repeat Photographs

We propose a total of 12 repeat photo locations:

- Depositional zone: 4
- Scarps: 2 in each

Wooden stakes will be driven into the ground to mark each repeat photo location. At each location, photos will be collected looking north, east, south, west. The initial post-construction photos will be collected within one month following construction. Photographs in years one and two following construction will be collected during the same month of each year.

Geomorphology

Each of the scarps and the depositional zone will be evaluated by a geomorphologist to identify areas of erosion, slumping, deposition, or other changes that have occurred since the end of construction. Identified locations will be documented on a map and described in the annual monitoring report.

Repeat surveys (referenced to NAD83 (horizontal) and NAVD88 (vertical), units in feet) will be completed at each of the four scarps. A longitudinal profile and one cross section will be surveyed at each scarp. Rebar benchmarks will be placed at the end locations of each of these survey sections so they can be found and resurveyed in subsequent years. The survey data will be displayed as comparative cross section graphs in the monitoring report. The surveys will occur

within one month of the end of construction and then in the same month of each year of monitoring.

Vegetation

Each planting area (depositional zone and each of the four scarps) will be surveyed for multiple vegetation metrics. Each of the potted plants installed on site will be evaluated for survivability. Plants that are dead or dying will be identified and documented in the monitoring report. The overall site percent ground cover will also be estimated for each planting area. A single, more detailed vegetation survey plot will be installed in each planting area. Each of these square plots will be 10 feet by 10 feet. In each study plot, each plant species will be identified and the percent cover by species estimated. The results will be included in the annual monitoring report.

"Wetland Determination Data Forms – Northcentral and Northeast Region" will be filled out at each observation plot during the early summer of each year. Annual follow-up data collection will be gathered within fourteen calendar days of the date of the first such data collection.

Plants will be identified to species level and scientific nomenclature should follow *The Vascular Plants of Massachusetts: A County Checklist-First Revision*, by Melissa Dow Cullina, Bryan Connolly, Bruce Sorrie and Paul Somers, Massachusetts Natural Heritage & Endangered Species Program, Massachusetts Division of Fish and Wildlife, 2011. Soil profiles shall be prepared per the above using the Regional Supplement to the Corps of Engineers Wetland Delineation Manual: Northcentral and Northeast Region.  Color photographs or color reproductions of photographs for each Observation Plot, both for plant community composition and hydric soil characteristics, will be submitted as part of this information.

A complete inventory of all vascular plants encountered in the BVW Replacement Area will be recorded. If invasive species are encountered, an eradication/control plan will be developed and submitted to MassDEP for approval by August 31st of each year.

Monitoring Report

We will develop a monitoring report at the end of each year of monitoring and will submit this report for review and comment by December 31st of each year. In this report, we will summarize the data collection methods, provide a summary of the data including graphs and figures, and provide conclusions or recommendations based on the findings.

All data collected during each of the years specified in the Consent Order shall be submitted in a written report.  Based upon the data collected during sampling events, the Professional Wetland Scientist shall render a conclusion within each report as to the success of the "Restoration/Replication Area(s)" in terms of 310 CMR 10.55(4)(b)1. through 7. and/or 314 CMR 9.06(2), and the establishment of wetland hydrology.

| Table 1: Schedule for data collection and reporting for post-construction monitoring. | | | |
|---|---|---|---|
| | Post Construction | 1 Year Post Construction | 2 Years Post Construction |
| Repeat photography | June 2021 | June 2022 | June 2023 |
| Repeat survey | June 2021 | June 2022 | June 2023 |
| Vegetation survey | June 2021 | June 2022 | June 2023 |
| Report | December 2021 | December 2022 | December 2023 |



*Figure 2 Post construction monitoring plan with locations of photo points, vegetation plots, and survey locations.*

# EXHIBIT D



INV-WE-18-6W009  103 Briar Hill Road, Williamsburg
Core Lands for Legal Preservation of Devils Den-
Portions of 130 Old Goshen Road and 103 Briar Hill Road

Date: 11/25/2019

0   250   500   1,000 Feet

MassDEP

# EXHIBIT E

## ESCROW AGREEMENT

**AGREEMENT** made this 27th day of January 2021 by and between Dynamic Energy Solutions, LLC ("Dynamic") and the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office")(collectively "Parties"), and Adam J. Brodsky, of Drohan Tocchio & Morgan ("DTM"), as escrow agent ("Escrow Agent").

Recitals

**WHEREAS,** the Commonwealth and Dynamic have executed a Consent Decree concurrently with the execution of this Escrow Agreement regarding the Commonwealth's allegations that Dynamic violated the Federal Clean Water Act, 33 U.S.C. § 1311(a), the Massachusetts Wetlands Protection Act, G.L. c. 131, § 40, the Massachusetts Clean Waters Act, G.L. c. 21, § 43(2), and their respective implementing regulations in relation to Dynamic's operations at a solar array site in Williamsburg.

**WHEREAS,** pursuant paragraph 16 of the Consent Decree, Dynamic has agreed to place two hundred thousand dollars ($200,000) in escrow to secure Dynamic's implementation of a land conservation transaction as compensatory mitigation for altered resource areas under the Consent Decree (the "Escrow Account").

**WHEREAS,** this Escrow Agreement sets forth the procedures by which funds may be released from the Escrow Account in accordance with the conditions of paragraph 16 of the Consent Decree;

**NOW, THEREFORE,** the Parties agree as follows:

I.    **Escrow Agent**

1.  The Parties designate Adam J. Brodsky, Esq., of Drohan Tocchio & Morgan, 175 Derby Street, Hingham, MA 02043, to be the Escrow Agent to hold, manage, and disburse the Escrow Account in accordance with the terms and conditions of the Consent Decree and of this Escrow Agreement.

II.   **Establishment of Escrow Account and Accounting**

2.  Dynamic shall deliver payments required under paragraph 16 of the Consent Decree (the "Escrow Payment") to the Escrow Agent in accordance with the terms and conditions of the Consent Decree.

3.  Within three (3) days of receiving the Escrow Payment, the Escrow Agent shall open a non-interest-bearing account in a federally-insured, Massachusetts bank and shall deposit into it the full amount of such payment.

4.  Within seven (7) days of opening the Escrow Account, the Escrow Agent shall notify the Parties of the name and address of the bank, the account number of the Escrow Account, the Escrow Account balance, and the date on which the Escrow Account was

1

opened. The Escrow Agent shall establish a checking account to facilitate disbursement of the Escrow Funds. The Escrow Agent shall keep possession of the bank statements and book(s) of the Escrow Account until such time as it is terminated in accordance with the terms of the Consent Decree and this Escrow Agreement, or until a successor Escrow Agent is appointed as provided herein.

5. The Escrow Account shall be opened with the signature of the Escrow Agent indicating that checks drawn against the account may be signed by the Escrow Agent and by no other person. Disbursements shall be made from the Escrow Account only in accordance with the terms of this Escrow Agreement.

6. The Parties shall have the right to inspect all books, bank statements, and records of the Escrow Agent relating to the Escrow Account at reasonable times upon request.

7. Any taxes, fees, charges, or other costs of administration of the Escrow Account shall be paid for by Dynamic and shall not be paid out of the Escrow Funds. Dynamic shall pay for the services of the Escrow Agent, and such payment for the services of the Escrow Agent shall not be paid out of the Escrow Funds.

III.    **Disbursements from Escrow Account**

8. *Payments to Dynamic for Cost Reimbursement* - As Dynamic and/or its agents incur costs for the performance of the compensatory mitigation obligations pursuant to paragraph 15 of the Consent Decree, Dynamic may submit periodically to the Attorney General's Office a written certification and request for authorization of disbursement of Escrow Account Funds. Any such certification and request shall be in the form of Attachment A hereto, which is incorporated herein, and shall include a certification of the paragraph 15 compensatory mitigation related action(s) completed with the date(s) and nature of the work or services performed, the amount(s) expended to complete such work, the person(s) to whom such money is owed, and shall enclose supporting document therewith. Only activities performed pursuant to paragraph 15 after the Effective Date shall be eligible for reimbursement from the Escrow Funds. The certification shall be signed by Michael Perillo, as Founder & Chief Executive Officer of Dynamic. Immediately upon receipt of written authorization from the Attorney General's Office in the form of Attachment B hereto, which is incorporated herein, the Escrow Agent shall pay the amount(s) authorized by the Attorney General's Office from the Escrow Account to the party(ies) indicated in the authorization.

9. *Payment to Dynamic of any Remaining Escrow Funds* – Should any amount of Escrow Funds remain after Dynamic has complied with its restoration and/or replication obligations under paragraph 15 of the Consent Decree, then the remaining funds shall be disbursed as follows: Immediately upon receipt of written authorization from the Commonwealth in the form of Attachment C hereto, which is incorporated herein, the Escrow Agent shall pay to Dynamic the remaining Escrow Funds.

10. Disbursements shall be made from the Escrow Account only in accordance with the terms of this Escrow Agreement.

IV.    **Termination of Escrow Account**

11. When any and all remaining Escrow Funds have been disbursed and the Escrow Account is terminated, the Escrow Agent shall provide a final accounting of all transactions hereunder to the Parties.

2

### V.    Responsibilities of Escrow Agent

12. The Escrow Agent's sole obligation hereunder shall be to perform the duties set forth in this Escrow Agreement, which duties are intended to be purely ministerial in nature. The Escrow Agent shall not be liable to either Party if the Escrow Agent acts in accordance with this Escrow Agreement. The Escrow Agent shall be entitled to assume the truth and correctness of any notice, signature, or document(s) presented to him. The Escrow Agent shall not be responsible for any act or failure to act on its part as Escrow Agent except it shall be responsible in the cases of its own bad faith or gross negligence.

### VI.    Resignation, Removal, or Successor Escrow Agent

13. The Escrow Agent may resign from serving as an escrow agent pursuant to this Escrow Agreement without prejudice to his rights, privileges, or immunities by giving at least thirty (30) days prior written notice to the Parties. Such resignation shall take effect on the date specified in such notice or on the date thirty (30) days from the date it is received by all parties, whichever is later, unless a successor Escrow Agent shall have been sooner appointed, in which event such resignation shall take effect immediately upon the appointment of a successor Escrow Agent.

14. The Escrow Agent may be removed at any time by a written instrument or concurrent instruments signed by both Parties and delivered to the Escrow Agent.

15. If at any time hereafter the Escrow Agent resigns, is removed, or otherwise becomes incapable of acting, or the position of Escrow Agent shall become vacant for any other reason, the Parties hereto shall promptly appoint a successor Escrow Agent. Upon appointment, such successor Escrow Agent shall execute and deliver to his/her predecessor and to the Parties hereto an instrument in writing accepting such appointment. Thereupon, without further act, such successor Escrow Agent shall be fully vested with all the rights, immunities, and powers, and shall be subject to all the duties and obligations of his/her predecessor, and the predecessor Escrow Agent shall promptly deliver all books, records, and other property and monies held by him/her hereunder to such successor Escrow Agent.

### VII.    Notices

16. All notices, certifications, authorizations, requests, or other communications required or permitted to be made under this Escrow Agreement shall be provided by email and delivered by hand, or by overnight courier, or by certified mail, postage prepaid, return receipt requested, as follows:

To the Attorney General's Office:

Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Massachusetts Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2642 (direct)
Nora.Chorover@state.ma.us

3

To Dynamic:

Michael Perillo, Founder & CEO
Dynamic Energy Solutions, LLC
1550 Liberty Ridge Drive, Suite 310
Wayne, PA 19087


To the Escrow Agent:

Adam J. Brodsky, Esq.
Drohan, Tocchio & Morgan, P.C.
175 Derby Street, Suite 30
Hingham, MA 02043
781-749-7200
abrodsky@dtm-law.com


## VIII.   **Miscellaneous**

17. This Escrow Agreement may not be amended, altered, or modified except by written instrument executed by all parties hereto.

18. The Parties agree that DTM shall not be precluded from representing Dynamic in this matter on account of its role as Escrow Agent.

19. In the event of any disagreement between Dynamic and the Attorney General's Office, the Escrow Agent may retain the Escrow Funds in the Escrow Account pending written instructions mutually given by the Dynamic and the Attorney General's Office, or at the Escrow Agent's discretion may deposit the funds with the United States District Court, District of Massachusetts and file an action of interpleader asking instructions from the Court as to whether the funds should be released and to whom.

20. This Agreement shall be governed by, construed in accordance with, and enforced under the laws of the Commonwealth of Massachusetts.


**IN WITNESS WHEREOF** the Parties have hereunto set their hands and seals this 27th day of January 2021.


Witness:                                              Office of the Attorney General


_E Mitchell_                                          By: _Nora J Ch_
_____                               _____

Print Name: Emily K. Mitchell                        Print Name: Nora J. Chorover, SAAG


4

Dynamic Energy Solutions, LLC

Print Name: Stephanie Browning

By: _____

Anthony E. Orr, General Counsel

Drohan Tocchio & Morgan P.C.

By: _____

Print Name: MARJORIE F. Morrison

Adam J. Brodsky, Esq.

5

**ATTACHMENT A TO ESCROW AGREEMENT**

**CERTIFICATION OF EXPENDITURES
AND
REQUEST FOR AUTHORIZATION OF PAYMENT**

1.   This Certification is contemplated by the [date] Escrow Agreement executed by the Commonwealth of Massachusetts, acting through the Office of the Attorney General ("Attorney General's Office") and Dynamic Energy Solutions, LLC ("Dynamic"), and it is intended to secure the release of funds contained in an Escrow Account established pursuant to the Escrow Agreement and paragraphs 15 and 16 of the Consent Decree in Commonwealth v. Dynamic Energy Solutions, LLC, Case No. 1:20-cv-10814. All terms used in this Certification shall have the same meaning as they have in the Escrow Agreement and the Consent Decree.

2.   Dynamic and/or its agent(s) has/have incurred costs necessary to comply with compensatory mitigation requirements set forth in paragraph 15 of the Consent Decree. These costs, in the amount of $_____, were incurred on the following date(s) for performance of the tasks indicated:

| Date | Nature of expense or work or services performed |
|------|--------------------------------------------------|
|      |                                                  |
|      |                                                  |
|      |                                                  |
|      |                                                  |

These costs are itemized in the **documentation attached hereto**.

3.   These costs do not include any of the following: (a) taxes, fees, charges or other costs of administration of the Escrow Account; (b) fees, charges or costs related to services of the Escrow Agent; or (c) fees, charges, or costs related to services of attorneys.

4.   I hereby certify that the actions for which the above-referenced costs were incurred were performed consistent with paragraph 15 of the Consent Decree, and consistent with applicable laws and regulations, including the Federal Clean Water Act, 33 U.S.C. § 1311(a), the Massachusetts Wetlands Protection Act, G.L. c. 131, § 40, the Massachusetts Clean Waters Act, G.L. c. 21, § 43(2), and their respective implementing regulations. Accordingly, pursuant to paragraph 8 of the Escrow Agreement, the Attorney General's Office should authorize the Escrow Agent to present payment to Dynamic in the amount specified:

| Payment to | Payment Amount |
|------------|----------------|
|            |                |
|            |                |
|            |                |
|            |                |

In witness whereof, the undersigned has executed this Certification under the pains and penalties of perjury this ___ day of _____, 20__.

_____, individually and as Founder and CEO of **Dynamic Energy Solutions, LLC**

Sworn and subscribed before me this ___ day of _____, 20__.

_____

Notary Public
My commission expires:

**ATTACHMENT B TO ESCROW AGREEMENT**

**AUTHORIZATION OF PAYMENTS NECESSARY FOR COMPLIANCE WITH THE COMPENSATORY MITIGATION REQUIREMENTS OF PARAGRAPH __ OF CONSENT DECREE**

1.      I am a duly authorized Attorney employed in the Environmental Protection Division (or any  successor division) of the Office of the Massachusetts Attorney General ("Attorney General's Office").This Certification is contemplated by the [DATE] Escrow Agreement executed by the Commonwealth of Massachusetts, acting through the Office of the Attorney General ("Attorney General's Office") and Dynamic Energy Solutions, LLC ("Dynamic"), and it is intended to secure the release of funds contained in an Escrow Account established pursuant to the Escrow Agreement and paragraph 12 of the Consent Decree in Commonwealth v. Dynamic, Case No. 1:20-cv-10814. All terms used in this Certification shall have the same meaning as they have in the Escrow Agreement and the Consent Decree.

2.      Dynamic and/or its agent(s) has/have incurred costs to comply with the restoration and/or replication requirements set forth in paragraph 19 of the Consent Decree. These costs, in the amount of $_____, are itemized in the documentation attached hereto (describing the nature of the work or services performed and the date(s) of performance). Pursuant to paragraph __ of the Escrow Agreement, the Escrow Agent is hereby directed to present payment immediately of the Escrow Funds in the amount(s) indicated to the party(ies) designated below:

| Payment to | Payment Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

OFFICE OF THE ATTORNEY GENERAL

By:_____

Name:_____

Title:_____

**ATTACHMENT C TO ESCROW AGREEMENT**

**AUTHORIZATION OF RELEASE OF REMAINING FUNDS
AND DIRECTIONS FOR PAYMENT**

1.    I am a duly authorized Attorney employed in the Environmental Protection Division (or any  successor division) of the Office of the Massachusetts Attorney General ("Attorney General's Office").This Certification is contemplated by the [DATE] Escrow Agreement executed by the Commonwealth of Massachusetts, acting through the Office of the Attorney General ("Attorney General's Office") and Dynamic Energy Solutions, LLC. ("Dynamic"), and it is intended to secure the release of funds contained in an Escrow Account established pursuant to the Escrow Agreement and paragraph 16 of the Consent Decree in Commonwealth v. Dynamic, Case No. 1:20-cv-10814. All terms used in this Certification shall have the same meaning as they have in the Escrow Agreement and the Consent Decree.

2.    Pursuant to paragraph 16 of the Escrow Agreement, the Escrow Agent is hereby directed to present payment immediately of the remaining Escrow Funds to Dynamic.

OFFICE OF THE ATTORNEY GENERAL


By:_____

Name:_____

Title:_____